*In re* KELLOGG

*Docket No. 89374. Submitted May 9, 1986, at Grand Rapids. Decided January 6, 1987.*

The Department of Social Services petitioned in the Emmet County Probate Court, Juvenile Division, seeking an order to terminate the parental rights of Judy Kellogg and James Peterson in their daughter on the grounds of neglect. The facts indicate that the father has had no contact with the child or mother since the birth of the child. Following a hearing, the probate court, John T. Murphy, J., found that the mother (hereafter respondent) would be unable to care for the child in the reasonable future and terminated parental rights pursuant to MCL 712A.19a(e); MSA 27.3178(598.19a)(e), which allows for termination if the parent is unable to provide a fit home for the child by reason of neglect. The court's finding of neglect was based upon respondent's history of depression and alcohol abuse including suicide attempts. Respondent appeals.

The Court of Appeals *held:*

1. The word "neglect" as used in subsection (e) of § 19a of the juvenile code necessarily entails some degree of culpability on the parent's part, by way of either intentional or negligent disregard of the child's needs. The parent must have committed some act or omission which is blameworthy. Here, no evidence showed intent or culpability in respondent's neglect of the child. The probate court's termination order was clearly erroneous since there was no evidence of culpable neglect.

2. Subsections (c) and (e) of § 19a of the juvenile code must be viewed as providing separate and distinct grounds for termination which are, in many cases, mutually exclusive.

3. The Court of Appeals declined to uphold the termination based on subsection (c) of § 19a of the juvenile code, noting that

REFERENCES

Am Jur 2d, Appeal and Error §§ 65-76.

Am Jur 2d, Parent and Child §§ 26, 27, 39, 40.

Validity of state statute providing for termination of parental rights. 22 ALR4th 774.

See also the annotations in the Index to Annotations under Appeal and Error; Presumptions and Burden of Proof.

the probate court made no specific findings of fact on this statutory basis. On remand, the petitioner may present evidence for termination based on mental illness.

Reversed and remanded.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — BURDEN OF PROOF.

The proper standard to be applied in parental rights termination proceedings is whether the state has proven the respondent unfit by clear and convincing evidence according to the statutory standards that justify termination (MCL 712A.19a; MSA 27.3178[598.19a]).

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — NEGLECT.

The word "neglect," as used in the subsection of the juvenile code providing the statutory standards that justify termination of parental rights, necessarily entails some degree of culpability on the parent's part, by way of either intentional or negligent disregard of the child's needs; to be neglectful, the parent must have committed some act or omission which is blameworthy (MCL 712A.19a[e]; MSA 27.3178[598.19a][e]).

3. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — APPEAL.

The function of the Court of Appeals on appeal in termination of parental rights cases is to review the probate court's findings under the "clearly erroneous" standard.

*John F. Salan,* Prosecuting Attorney, and *Robert J. Engel,* Chief Assistant Prosecuting Attorney, for petitioner.

*Breighner Law Offices* (by *Martin B. Breighner III*), for respondent.

*Stroup, Mulhauser, Johnson & Tresidder, P.C.* (by *Frederick R. Mulhauser*), Guardian ad Litem for the minor child.

Before: D. E. HOLBROOK, JR., P.J., and SHEPHERD and M. E. DODGE,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

Per Curiam. Respondent Judy Kellogg appeals as of right from a November 5, 1985, probate court order which terminated her parental rights in her eight-year-old daughter on grounds of neglect. MCL 712A.19a; MSA 27.3178(598.19a). We reverse.

Respondent is the mother of Amanda Kellogg, born August 1, 1977. The putative father, respondent James Peterson, has had no contact with the child or mother since the child was born and is not a party to this appeal. Respondent mother has a history of depression and alcohol abuse. She was hospitalized twice in the summer of 1983 for alcohol abuse and depression. In February, 1984, she was hospitalized for a drug overdose stemming from an attempted suicide. At that time respondent contacted the Department of Social Services in Emmet County and requested that Amanda be placed in foster care while respondent recovered. That same day the DSS filed a neglect petition, requesting that the probate court assume jurisdiction over Amanda. Respondent did not contest the petition and Amanda was placed in foster care in the home of Charles and Norma Fletcher. Even prior to their becoming Amanda's foster parents, the Fletchers were prominent figures in Amanda's life. Mrs. Fletcher had provided day care for Amanda from the time she was two months old. As time passed, Amanda began to stay with the Fletchers for increasing periods of time, including overnight and extended stays. She lived with the Fletchers from June to November, 1983, and then as a foster child pursuant to court order beginning in February, 1984.

After Amanda was placed in foster care, respondent moved to the Saginaw area where she began working as a nurse's aide. In November, 1984, respondent was seriously injured in a single vehicle automobile accident which she believed might

have been a second suicide attempt. She was hospitalized for about two months. From February to September, 1985, respondent received counseling for her depression and alcohol abuse with little or no success. She is currently in therapy with another counselor.

The probate court held statutory review hearings pursuant to MCL 712A.19; MSA 27.3178(598.19) on September 20, 1984, and May 9, 1985. In response to a DSS petition to terminate parental rights, the probate court held a hearing on the issue on November 5, 1985. Laura Patterson, a psychologist who conducted a psychiatric evaluation of respondent, testified that respondent exhibited long-standing emotional difficulties and mental illness in the form of severe depression and occasional manic behavior. In her opinion, respondent would not be able to care for the child within a year. She could not give an opinion whether respondent would be capable of caring for Amanda after a longer period of time, but did state that the longer the history of depression, the more difficult it would be to treat. Roy Hornfield, a clinical social worker and counselor who counseled respondent during fourteen sessions, diagnosed her condition as neurotic depression and episodic alcohol abuse. He testified that he made little progress in counseling respondent and ended the sessions for that reason. At the conclusion of the hearing the probate court found that respondent would be unable to care for the child in the reasonable future and terminated parental rights pursuant to MCL 712A.19a(e); MSA 27.3178(598.19a)(e), which allows for termination if "[t]he parent . . . is unable to provide a fit home for the child by reason of neglect."

Respondent first argues on appeal that the probate court could not terminate her parental rights

in the absence of evidence of intentional or culpable neglect. Petitioner admits that there was no physical abuse or "typical neglect on the part of the parent who fails to provide the necessary things for a child's sustenance." Rather, petitioner argues, based on the respondent's history of depression and attempted suicide, that "this is a case of emotional neglect."

We reject petitioner's broad interpretation of the statutory standards for termination. In termination cases, unlike custody cases where the best interests of the child predominate, the probate court must decide whether it should permanently sever all ties between the parent and child. Before the court may take such draconian action, it must strictly comply with the statutory standards set forth in MCL 712A.19a; MSA 27.3178(598.19a). In *In the Matter of McDuel,* 142 Mich App 479, 488; 369 NW2d 912 (1985), we stated:

> As noted by the Supreme Court in *Fritts* [*v Krugh,* 354 Mich 97, 115; 92 NW2d 604 (1958)], the fitness of parents "must be measured by statutory standards". If the standards contained in the statute are not all-inclusive, then the probate court is left with no compass to guide its decision other than its subjective determination of the "best interests" of the child. [*In the Matter of*] *Sharpe,* [68 Mich App 619; 243 NW2d 696 (1976)]. This is "totally inappropriate", *Fritts, supra,* p 115, since the child's best interests are not at stake in the parental rights termination proceeding. The issue is whether respondent's rights as a parent will be forever terminated. While the best interests of the child may be considered in arriving at an appropriate dispositional order if and when respondent's rights are terminated, they have no relevance to that termination. [*In the Matter of*] *Schejbal,* [131 Mich App 833, 836; 346 NW2d 597 (1984)]; *In the Matter of Barbara A Ernst,* 130 Mich App 657,

664-665; 344 NW2d 39 (1983); *In the Matter of Atkins,* 112 Mich App 528, 541; 316 NW2d 477 (1982), lv den 413 Mich 912 (1982). The proper standard is whether the state has proven respondent unfit by clear and convincing evidence according to statutory standards, not whether the child would be better off in a foster home. *Atkins, supra.* Due to the fundamental nature of parental rights, we are bound to this standard as a matter of constitutional law. *Santosky v Kramer,* 455 US 745; 102 S Ct 1388; 71 L Ed 2d 599 (1982).

Michigan has never accepted the view that the state may seek to sever all ties, legal and emotional, between parent and child merely because a child would be better off in the home of someone other than the parent, and that, therefore, it is in the best interests of the child to be taken away from its parents. Rather, the Legislature has established six specific categories justifying termination of parental rights in § 19a of the juvenile code. The court may terminate parental rights if it finds abandonment under subsections (a) or (b), that the parent is unable to provide proper care because of mental illness or deficiency under subsection (c), that the parent is unfit or unable to care for the child because he or she has been convicted of a felony under subsection (d), that the parent is unable to provide a fit home for the child by reason of neglect under subsection (e), or that the child has been in the temporary custody of the court on a neglect petition for at least two years and the parents fail to establish that they will be able to reestablish a proper home for the child within the following twelve months under subsection (f).

These are the standards that justify termination and these are the issues which the courts must address before deciding to say to a parent and

child that they are no longer tied to each other by any relationship recognized by the law. We emphasize that we are not addressing the issues of temporary wardship or guardianship or the long term necessity to have children cared for by the state or by others. We are only concerned here with the ultimate and drastic remedy of complete termination of parental rights.

In the case of neglect under subsection (e), this Court has held that "the words 'neglect' necessarily entails some degree of culpability on [the parent's] part, by way of either intentional or negligent disregard of the child's needs. . . . [W]e are of the view that to be neglectful within the meaning of the statute respondent must have committed some act or omission which is blameworthy." *McDuel, supra,* pp 485-486. See also, *In the Matter of Bailey,* 125 Mich App 522, 527; 336 NW2d 499 (1983).

In the present case, there was testimony that respondent's inability to care for Amanda was a result of emotional difficulties, depression, and manic behavior. No evidence showed intent or culpability in her neglect of Amanda. In fact, many of her actions were done with Amanda's well-being in mind. In February, 1984, respondent approached the DSS for help in caring for Amanda when her depression became severe. This does not constitute neglect. As stated in *In the Matter of Moore,* 134 Mich App 586, 602; 351 NW2d 615 (1984), "[w]e do not believe that a parent who seeks a temporary placement of her children through a county department of social services acts neglectfully." In addition, placing Amanda in the care of the Fletchers was not neglectful. See *In the Matter of Curry,* 113 Mich App 821; 318 NW2d 567 (1982); *In the Matter of Carlene Ward,* 104 Mich App 354; 304 NW2d 844 (1981).

We conclude that the probate court erred by terminating respondent's parental rights on the ground of neglect since there was no evidence of culpable neglect. The court's finding that respondent "simply does not have the necessary psychological make-up to provide the mothering that the child should have" does not establish neglect under the statute.

On appeal, petitioner argues in the alternative that respondent's parental rights could have been terminated under subsection (c) of § 19a. That subsection provides that the probate court may terminate parental rights if it finds that

> (c) A parent or guardian of the child is unable to provide proper care and custody for a period in excess of 2 years because of a mental deficiency or mental illness, without a reasonable expectation that the parent will be able to assume care and custody of the child within a reasonable length of time considering the age of the child.

Although petitioner presented evidence at trial that respondent suffered from mental illness in the form of severe depression,[1] it did not assert mental illness as a reason for termination and the trial court made no specific findings of fact on this statutory basis for termination. Our function on appeal in termination cases is to review the probate court's findings under the clearly erroneous standard. *In re Cornet,* 422 Mich 274, 277; 373

---

[1] Mental illness is not defined in the juvenile code but is defined in the Mental Health Code as follows:

> As used in this chapter, "mental illness" means a substantial disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life. [MCL 330.1400a; MSA 14.800(400a).]

NW2d 536 (1985). It is the function of the probate court as factfinder to determine in the first instance whether the petitioner has proven by clear and convincing evidence that termination of parental rights is warranted. *McDuel, supra,* p 484. Although on occasion this Court has upheld termination under a different subsection of § 19a than the one considered by the probate court (see *Bailey, supra,* "right result, wrong reason"), we decline to accept petitioner's invitation to do so in the present case where the evidence presents a close question as to whether termination would be warranted based on mental illness. Accordingly, we reverse the probate court's order terminating respondent's parental rights and remand for new trial. On remand the petitioner may present evidence for termination based on mental illness. The probate court should then consider whether respondent is "unable to provide proper care and custody for a period in excess of 2 years" because of mental illness[2] and whether she is presently unable to care for her child because of mental illness without a reasonable expectation that she will be able to do so "within a reasonable length of time considering the age of the child." MCL 712A.19a(c); MSA 27.3178(598.19a)(c). In light of our disposition of these issues, we do not deem it necessary to discuss respondent's other claims of error.

We are keenly aware of the concern of the public, the probate courts and the Department of Social Services that the courts need to address the needs of children who by reason of circumstances

---

[2] The two-year requirement is not a jurisdictional limit on the probate court's authority to terminate parental rights. The probate court has authority to terminate parental rights if it appears that the two-year period will elapse without change in the parents' inability to care for the child. *In the Matter of Kenyatta Brown,* 139 Mich App 17, 21-22; 360 NW2d 327 (1984).

beyond their control are placed in the kind of situation faced in this case. We are nevertheless bound by the policies embodied in legislation adopted by the representatives of the people. Where deficiencies exist in the legislation, those who seek reform must address themselves to the Legislature. In our view of the statute we believe that subsections (c) and (e) must be viewed as separate and distinct grounds for termination which are, in many cases, mutually exclusive. MCL 712A.19a; MSA 27.3178(598.19a).

As this Court has previously held "the word 'neglect' necessarily entails some degree of culpability on [the parent's] part, by way of either intentional or negligent disregard of the child's needs. . . . [W]e are of the view that to be neglectful within the meaning of the statute respondent must have committed some act or omission which is blameworthy." *McDuel, supra,* pp 485-486.

When termination is warranted due to a parent's mental deficiency or mental illness, a finding of neglect would generally be inconsistent. The mental illness or deficiency of the parent would normally render the parent incapable of forming the requisite mental state necessary for a finding of neglect which is culpable in nature.

We believe it is also important to point out at this juncture that the concept of culpable or blameworthy neglect may also encompass the negligent failure of a parent to act in relation to the welfare of a child. For example, a parent who substantially fails to comply with a court-ordered treatment plan established to remedy the parental care problems presented in a specific case would be chargeable with culpable neglect for failure to act for the benefit of the child. Likewise, the parent who fails to attend or profit from court-ordered alcohol or substance abuse counseling when prior

alcohol or drug use has interfered with parenting would be guilty of culpable neglect for failure to act affirmatively to remedy an identified problem.

Another of our concerns involves the quality of fact-finding in such difficult cases as these. We firmly believe that the findings of the trial judge should be given great deference in termination cases. The trial judge in a termination case frequently presides over the case from beginning to bitter end. Often, this will provide plentiful opportunities for the court to assess the credibility of the witnesses and critically evaluate all the evidence.

It is, however, most essential that the trial court enunciate its findings with sufficient clarity to allow the reviewing court to discern the basis for the decision reached. An application of the now developing legal principles in termination cases to specific factual findings by the trial court will no doubt serve to enhance the quality of appellate review in this area.

Reversed and remanded for new trial.