*In re* STERLING

Docket No. 89794. Submitted January 7, 1987, at Grand Rapids. Decided August 17, 1987.

The Berrien County Department of Social Services petitioned in the Berrien County Probate Court, Juvenile Division, seeking an order terminating the parental rights of Marilyn and Larry Sterling to three minor children who allegedly had been left in the care of others without adequate provision for their care and without communication for over six months. The probate court, Wilbur Schillinger, J., determined that the father and mother had abandoned their minor children and failed to provide a stable or fit home for them. The court ordered that the three minor children be made permanent wards of the court and that the parental rights of Marilyn and Larry Sterling be terminated. Marilyn Sterling appealed.

The Court of Appeals *held:*

1. The findings of fact supporting the termination of parental rights were not clearly erroneous. The Court of Appeals does not have a definite and firm conviction that a mistake was made.

2. Clear and convincing evidence supports the probate court's findings that the children were abandoned pursuant to MCL 712A.19a(b); MSA 27.3178(598.19a)(b).

3. A finding of culpability or intent to neglect is not a legislative requirement for the termination of parental rights under MCL 712A.19a(e); MSA 27.3178(598.19a)(e). Clear and convincing evidence supports the probate court's finding that respondent is unable to provide a fit home for the children by reason of neglect.

4. The culpability implied in the term "when able to do so"

REFERENCES

Am Jur 2d, Parent and Child §§ 7, 12, 14, 23 *et seq.*; 34, 35, 41 *et seq.*

Validity of state statute providing for termination of parental rights. 22 ALR4th 774.

Who has custody or control of child within terms of penal statute punishing cruelty or neglect by one having custody or control. 75 ALR3d 933.

contained in MCL 712A.2(b); MSA 27.3178(598.2)(b) refers only to the failure-to-provide-support type of neglect found in the first clause of § 2(b)(1) and cannot reasonably be applied to the unfit-home type of neglect found in § 2(b)(2) or in MCL 712A.19a(e); MSA 27.3178(598.19a)(e).

5. The statutory grounds for termination of parental rights were met. Clear and convincing evidence supports the court's decision to terminate respondent's parental rights. The court was under no duty to place one of the children with relatives.

Affirmed.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — AP-
PEAL.

Findings of fact which support termination of parental rights will not be reversed unless they are clearly erroneous; findings of fact are considered clearly erroneous, even if there is evidence to support them, when, on the basis of all the evidence, the reviewing court develops the definite and firm conviction that a mistake was made.

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS.

A court must find clear and convincing evidence establishing grounds for permanent termination of parental rights before such rights may be terminated (MCL 712A.19a; MSA 27.3178(598.19a).

3. PARENT AND CHILD — ABANDONMENT OF CHILD — EVIDENCE —
INTENT.

The failure to provide support or to communicate with a child for six months is presumptive evidence of a parent's intent to abandon the child (MCL 712A.19a[b]; MSA 27.3178[598.19a][b]).

4. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — NE-
GLECT — CULPABILITY.

A finding of culpability or intent to neglect is not a legislative requirement for the termination of parental rights under the statute regarding permanent termination where the parent or guardian is unable to provide a fit home for the child by reason of neglect (MCL 712A.19a[e]; MSA 27.3178[598.19a][e]).

5. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — CULPA-
BILITY.

Children may be removed from parents who fail to provide proper or necessary support, education, medical, surgical, or other care necessary when they can afford financially to do so; children may be removed from parents without a showing of culpability when the home or environment, by reason of neglect, is an

unfit place for the child to live in (MCL 712A.2 subds [b][1] and [2]; MSA 27.3178[598.2] subds [b][1] and [2]).

*Paul L. Maloney,* Prosecuting Attorney, and *David LaForge,* Assistant Prosecuting Attorney, for petitioner.

*Berrien County Legal Services Bureau, Inc.* (by *David J. Kirschenheiter*), for respondent.

Before: MacKenzie, P.J., and Weaver and J. E. Roberts,* JJ.

Weaver, J. Respondent Marilyn Sterling (hereafter respondent) appeals as of right from a probate court order terminating the parental rights to her three minor children. We affirm.

Respondents Marilyn and Larry Sterling were married in April of 1972, after the birth of Eunice Joy Moore in February of 1971. Although separated, Mr. and Mrs. Sterling remain married. Mr. Sterling is in arrears on his child support payments for in excess of $9,000. There are paternity questions concerning all of Mrs. Sterling's children. At issue is the termination of her parental rights only as to the three youngest children, Cory Donnial B.B. Sterling, born in October of 1977, Marci Christina Moore, born in December of 1981, and Ger'l Jameel Sterling, born in January of 1983. Mr. Sterling has not appealed.

These proceedings were initiated by a complaint filed by a Berrien County Department of Social Services children's protective services worker. The worker alleged that Mrs. Sterling was a drug addict who had been evicted from her home due to nonpayment of rent and was living with her elderly father; that she was an unemployed ADC

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

recipient who would give some of her food stamps to her father and sell the rest for drugs; that during the approximately three years respondent had been "shooting up" and before she was evicted, she would often leave her children for several days, causing the oldest child, Eunice Joy, to miss school in order to care for her younger siblings; that respondent would also leave the children, without adequate provision and without notice of her whereabouts, with her father for periods of increasing length; and that the father lived on a retirement pension and could not support the children during these absences, so he had finally contacted the police for help in locating his daughter.

The preliminary hearing resulted in an order for temporary removal of the children from their home and foster placement with their maternal aunt, Madine Williams. Several other hearings followed, only the first of which respondent attended. At the June 13, 1984, hearing, the parties stipulated to the court's jurisdiction under MCL 712A.2(b)(1); MSA 27.3178 (598.2)(b)(1). They also stipulated to the admission of reports submitted by the DSS worker, a DSS children's foster care specialist and a psychologist.

The reports indicated that respondent had been a good mother before her dependency on alcohol, cocaine and heroin began some five years previously, when her own mother died and her oldest daughter (not involved in these proceedings) was institutionalized for mental retardation; that because respondent had been upset during the preliminary hearing, she left after listening to the complaint; that because she wanted to get her children back she later went for treatment to the Share House in Detroit but stayed only a few days, left without notice and shortly thereafter was

jailed for disorderly conduct and assaulting an officer; that respondent seemed generally disinterested in substance abuse counseling and other forms of treatment; that the boys were placed in foster care; that the girls were placed with respondent's sister, Madine Williams, and were supervised by respondent's father while Ms. Williams worked; and that respondent had visited the girls but never asked to see the boys. Respondent testified that she had not used drugs for about nine months; in fact, she denied having a drug problem.

The court accepted DSS's recommendations, declaring the children temporary wards of the court —the girls to remain with Madine Williams and the boys to remain in foster care. The court then scheduled a review and possible termination hearing to be held in six months.

At the hearing on December 5, 1984, reports were admitted from a different DSS foster care specialist, an outreach counselor and the same psychologist. The reports recounted respondent's long absences (up to more than two months), her numerous missed appointments with outreach and substance abuse counselors, her sporadic visitation of the children and her continued denial of drug addiction.

The court continued the status quo and scheduled another review and possible termination proceeding to be held in six months. However, the hearing date was continued when the children's guardian ad litem withdrew due to a conflict of interest. That date was likewise rescheduled to allow Mr. Jameel Jabbaar, who unexpectedly appeared alleging paternity of Marci and Ger'l, to retain counsel.

At the hearing on November 20, 1985, the court admitted reports from DSS and the psychologist, all

reiterating respondent's missed appointments, sporadic visitation, continued and increasingly long absences (up to three months), and her chameleon-like attitude toward drug rehabilitation. The reports also discussed problems developing with child placement; Madine Williams was vacillating in her willingness to continue support of the girls, thereby precipitating their placement in foster care. After respondent allegedly visited the girls when she was "high" and told Eunice about her life on the streets, Ms. Williams declined to have respondent visit the girls at her home; she then refused to take the girls at all, although she later agreed to take Marci without Eunice. Eunice herself wished to avoid foster care, preferring to live with her mother or father; however, the father was awaiting sentencing for his criminal conviction of uttering and publishing.

The DSS foster care specialist testified that during the last six months respondent saw Eunice only once or twice and had no communication at all with the three younger children. She also failed to appear for the hearing after receiving a specific reminder the previous day and an offer of transportation. The DSS specialist suggested retaining Eunice as a temporary ward of the court to await placement with her father upon his possible receipt of probation, but recommended that rights to the other three children be terminated. She also testified that Jameel Jabbaar, the alleged father of Marci and Ger'l, had several criminal convictions, was not recognized by the children as their father, had submitted no plan for their care and never kept any appointments concerning their placement. Although placement for Marci was still possible with her aunt, the specialist thought that such placement would be detrimental, especially to Eunice, and that the interests of all the children

would be best served if the three younger children stayed together.

After reviewing applicable law and the standard of review, and after making findings of fact, the court ordered Eunice a temporary ward of the court with placement in foster care until, with her guardian's approval, she could live with her father. The court ordered Cory, Marci and Ger'l permanent wards of the court, with all parental rights of Marilyn and Larry Sterling terminated. The written order entered on November 27, 1985, also determined that Jameel Jabbaar was not the father of the children and therefore he was without standing. The court made a similar determination regarding Cory's alleged father, one William Magee. The court's order stated that clear and convincing evidence showed, pursuant to MCL 712A.19a(b) and (e); MSA 27.3178(598.19a)(b) and (e), that the father and mother had abandoned their minor children and failed to provide a stable or fit home for them. Marilyn Sterling appeals as of right.

On appeal, respondent argues that because her neglect of the children was not intentional or blameworthy her rights cannot be terminated and that rights to Marci in any event should not be terminated because placement with her maternal aunt is still possible. Dss responds that proof of culpable conduct is not required to terminate parental rights, and that clear and convincing evidence supports the probate court's decision. We agree with Dss and affirm.

### STANDARD OF REVIEW

Findings of fact which support termination of parental rights will not be reversed unless they are clearly erroneous. *In re Cornet,* 422 Mich 274,

277; 373 NW2d 536 (1985). Even if there is evidence to support them, findings are considered clearly erroneous when, on the basis of all the evidence, the reviewing court develops the definite and firm conviction that a mistake was made. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976). We find no mistake here.

Before terminating parental rights, the court must find clear and convincing evidence establishing grounds for permanent termination. *In re Schejbal,* 131 Mich App 833, 836; 346 NW2d 597 (1984). MCL 712A.19a; MSA 27.3178(598.19a) specifically enumerates examples of grounds for termination. *In re Sharpe,* 68 Mich App 619, 623-625; 243 NW2d 696 (1976). Section 19a provides in pertinent part:

> Where a child remains in foster care in the temporary custody of the court following the initial hearing . . . , the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:
>
> \* \* \*
>
> (b) The child is left with intent of desertion and abandonment by his parent or guardian in the care of another person without provision for his support *or without communication for a period of at least 6 months.* The failure to provide support or to communicate for a period of at least 6 months shall be *presumptive evidence* of the parent's intent to abandon the child. If, in the opinion of the court, the evidence indicates that the parent or guardian has not made regular and substantial efforts to support or communicate with the child, the court may declare the child deserted and abandoned by his parent or guardian.
>
> \* \* \*
>
> (e) The parent or guardian is unable to provide a fit home for the child by reason of neglect.

The probate court in its order terminating parental rights found clear and convincing evidence that both parents abandoned the three younger children pursuant to § 19a(b) and were unable to provide a fit home by reason of neglect pursuant to § 19a(e).

## ABANDONMENT

Respondent's assertion that she never intended to abandon her children, and therefore could not have her parental rights terminated under § 19a(b), is countered by the statute itself, which declares that failure to provide support or to communicate for six months shall be presumptive evidence of a parent's intent to abandon the child. MCL 712A.19a(b); MSA 27.3178(598.19a)(b). There was unrefuted testimony at the termination hearing that respondent was not supporting her children and had had no contact at all with the three youngest ones during the preceding six months. Therefore, clear and convincing evidence supports the probate court's findings that the children were abandoned pursuant to § 19a(b).

## NEGLECT

Respondent relies on a recent line of appellate court cases which favor a showing of culpable conduct before parental rights may be terminated for "neglect" under § 19a(e). *In re Bailey,* 125 Mich App 522; 336 NW2d 499 (1983); *In re McDuel,* 142 Mich App 479; 369 NW2d 912 (1985); *In re Tedder,* 150 Mich App 688; 389 NW2d 149 (1986). In *Bailey* the Court found that mentally retarded parents were not neglectful within the statute's meaning if the neglect arose solely from their limited mental abilities, since such limitation was insufficient to

establish intent or culpability.[1] *Bailey, supra,* p 527. *McDuel* opined that physical incapacity, multiple sclerosis and confinement to a wheelchair, could not constitute statutory neglect, since acts or omissions pursuant to such incapacity were not blameworthy.[2] *McDuel, supra,* p 486. *Tedder* further held that a characterological disorder, paranoid schizophrenia, was inadequate to demonstrate statutory neglect since conduct arising from the disorder was not blameworthy. *Tedder, supra,* pp 698-699.

We decline to follow *Bailey, McDuel* and *Tedder* because we are convinced that a finding of culpability or intent to neglect is not a legislative requirement for the termination of parental rights under § 19a(e).

The Michigan juvenile code, MCL 712A.1 *et seq.;* MSA 27.3178(598.1) *et seq.,* provides no definition of "neglect." The notion of a culpability requirement appears to be derived from the conclusion that the jurisdictional section, MCL 712A.2(b); MSA 27.3178(598.2)(b), provides such a definition.[3]

[1] However, the Court upheld termination of parental rights on the basis of mental deficiency or illness, interpreted pursuant to § 19a(c). *Bailey, supra,* pp 528-529.

[2] The Court in *McDuel* appeared to be influenced by the trial court's inappropriate substitution of the word "physical" for the statutory ground of "mental" incapacity described in § 19a(c). *McDuel, supra,* pp 483-484, 489-490.

[3] In *Bailey, supra,* the Court stated:

> Neglect per se is defined neither in Michigan's statute nor case law. In general, however, MCL 712A.2(b); MSA 27.3178(598.2)(b) provides the basis for the assumption of jurisdiction by the juvenile division of the probate court. This statute would seem to support appellants' argument that a termination for reasons of neglect requires a finding of some intent or culpability. Jurisdiction over a child may be assumed when a parent who is "able to do so" fails to properly care for the child. Several cases have found neglect and affirmed termination of parental rights.
>
> Review of the findings in the present case do not support

*Bailey, supra,* p 527. This statutory language con-
fers upon the juvenile division of the Michigan
probate courts jurisdictional power over a minor
child

> (1) *Whose* parent or other person legally respon-
> sible for the care and maintenance of the child,
> *when able to do so, neglects or refuses to provide*
> proper or necessary support, . . . or other care
> necessary for his or her health or morals, *or who*
> is deprived of emotional well-being, *or who* is
> abandoned by his or her parents, guardian, or
> other custodian, *or who* is otherwise without
> proper custody or guardianship.
>
> (2) *Whose* home or environment, by reason of
> neglect, cruelty, drunkenness, criminality, or de-
> pravity on the part of a parent, guardian, or other
> custodian, *is an unfit place for the child to live in.*
> [MCL 712A.2(b); MSA 27.3178(598.2)(b).]

The Court in *Bailey* concluded without explana-
tion that the "when able to do so" language of
§ 2(b)(1) was a foundational requirement for "ne-
glect" in order to terminate parental rights under
§ 19a(e). We believe this to be a misreading of the
two sections.

The term "when able to do so" appears in only
one of the five parallel dependent clauses starting
with "whose" or "who."[4] It does not appear in

> termination of appellants' rights for the reason of neglect as
> anticipated by statute and case law. Nevertheless, we find the
> findings to have been justified pursuant to subsection (c). [*Id.,*
> pp 527-528. Citations omitted.]

[4] The following diagram of MCL 712A.2(b); MSA 27.3178(598.2)(b)
shows that the principal or independent clause is followed by a series
of five parallel dependent clauses, all starting with "whose" or "who."
In order to highlight the significant aspects of this structure, we have
emphasized several terms:

> Sec. 2. Except as otherwise provided in this section, the
> juvenile division of the probate court shall have:

* * *

§ 2(b)(2) at all; it only appears in § 2(b)(1), and then only in the first dependent clause. Reading the statute in this context, we believe that the "when able to do so" § 2(b)(1) type of neglect contemplated by the first clause is the failure by parents "to provide proper or necessary support, education . . ., medical, surgical, or other care necessary" when they can afford financially to do so. Thus, while the "when able to do so" limitation of § 2(b)(1) makes it unacceptable to remove children from parents merely because they are without financial means to act, § 2(b)(2), containing no "when able to do so" limitation, makes it acceptable to remove children from parents when the "home or environment, by reason of neglect . . ., is an unfit place for the child to live in."

Therefore it is clear that the culpability implied in the term "when able to do so" refers only to the failure-to-provide-support type of neglect found in the first clause of § 2(b)(1) and cannot reasonably be applied to the unfit-home type of neglect found in § 2(b)(2) or in § 19a(e).

It is evident that the underlying purpose of the statutory scheme is to protect children from an unfit homelife. The purpose is not to punish bad parents by terminating their parental rights. If

---

(b) Jurisdiction in proceedings concerning any child under 17 years of age found within the county:

(1) *Whose* parent or other person legally responsible for the care and maintenance of the child, *when able to do so,* neglects or refuses to provide proper or necessary support, education as required by law, medical, surgical, or other care necessary for his or her health or morals,

*or who* is deprived of emotional well-being,

*or who* is abandoned by his or her parents, guardian, or other custodian,

*or who* is otherwise without proper custody or guardianship.

(2) *Whose* home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, or other custodian, is an unfit place for the child to live in.

the probate court may take jurisdiction over minor children living in an unfit home, but may not terminate parental rights because it finds no culpability or intent to neglect, the statute's purpose is defeated. Such a reading of the statute would create the anomalous effect of either forcing children into foster care for an indefinite period, as the Court sanctioned in *McDuel, supra,* p 490, or returning them to homes known to be unfit. Surely the Legislature did not intend, as allowed in *Tedder,* for a child to suffer long-term damage in the unfit home of a schizophrenic parent and be precluded from the statutory relief afforded by termination of parental rights.

Further, we decline to follow *In re Kellogg,* 157 Mich App 148; 403 NW2d 111 (1987), a recent case in the *Bailey, McDuel, Tedder* line of cases. In *Kellogg,* the trial court, recognizing the mother had a history of depression, alcohol abuse and attempted suicide, found under § 19a(e) that the mother was unable to provide a fit home for the child by reason of neglect and terminated her parental rights, stating that the mother "simply does not have the necessary psychological make-up to provide the mothering that the child should have." *Id.,* p 155. A panel of this Court reversed the termination of the mother's parental rights because "[n]o evidence showed intent or culpability in her *neglect* of Amanda" since the neglectful mother "approached the DSS for help in caring for Amanda when her depression became severe." *Kellogg, supra,* p 154. Under this reasoning it would appear that a parent may be neglectful and not be subject to termination of parental rights as long as he or she asks for help. This seems far from the purpose of the statute, which is to protect a child from an unfit home. The statute uses the

word "neglect," not "culpable neglect," as grounds for terminating parental rights.

Although we believe the above analysis ample to demonstrate the error of interpreting a culpability or blameworthiness requirement for § 19a(e), we also note that the proceeding to terminate parental rights is civil and not criminal. We believe it is a mistake to read into a civil proceeding the mens rea requirement denoting culpability, intent, or blameworthiness normally associated with criminal proceedings.

Finally, we recognize that recent panels of this Court have affirmed termination orders under § 19a(e) without a finding of culpability or blameworthiness. *In re Riffe,* 147 Mich App 658, 671-672; 382 NW2d 842 (1985), lv den 424 Mich 904 (1986); *In re Slis,* 144 Mich App 678, 688; 375 NW2d 788 (1985); *In re Harmon,* 140 Mich App 479, 483; 364 NW2d 354 (1985). We think that if the Legislature had thought it necessary to find culpability or blameworthiness under § 19a(e), it would have said so. See *McDuel, supra,* p 487.

Because we decline to follow the reasoning of *Bailey* and its progeny, we affirm the lower court's finding that respondent is unable to provide a fit home for the children by reason of neglect. Clear and convincing evidence supports this finding.

BEST INTERESTS OF THE CHILD

Respondent's last argument is that termination of parental rights was not clearly in the best interests of the child Marci, since placement with her maternal aunt was still available. Dss responds that Marci's placement with her aunt would not be in the child's best interest, and that the aunt was an unreliable placement, her previ-

ous rejection of the children having already necessitated their placement in foster care.

Once statutory grounds for termination have been established by clear and convincing evidence, the trial court considers the best interests of the child. *Schejbal, supra,* p 836. The court then enters findings of fact under the clear and convincing evidence standard. *Slis, supra,* p 685.

In this case the statutory grounds were met. After considering the recommendations of all the caseworkers and counselors, the court entered detailed findings of fact and conclusions of law summarizing respondent's history of involvement with community services, her failed attempts to accept responsibility for herself or her children and the bleak prospect of her ever becoming a fit parent. The court also noted the aunt's unreliability on the custody issue. Pointing out that placements with a relative had already been tried and that DSS had taken all reasonable steps to provide for the children's return home, the court determined it to be in the best interests of the children to terminate parental rights as to all three children, including Marci.

Clear and convincing evidence supports the court's decision. The court was not under a duty to place the child with relatives. *In re Futch,* 144 Mich App 163, 170; 375 NW2d 375 (1984).

CONCLUSION

We affirm the lower court's decision to terminate respondent's parental rights. Having considered all of the evidence throughout the process of several hearings, having entered detailed findings of fact and conclusions of law under a clear and convincing evidence standard, and having consid-

ered the best interests of the children, the court's actions were procedurally correct. Once entered, the court's findings may not be reversed unless from a review of the evidence they appear to be clearly erroneous. Here, the findings were not clearly erroneous; respondent left her children in the care of others without adequate provision and without communication for over six months; therefore, she was deemed to have abandoned them. MCL 712A.19a(b); MSA 27.3178(598.19a)(b). Likewise, we find no mistake in the court's determination that respondent was unable to provide a fit home for her children by reason of neglect, it being unnecessary to establish culpability or blameworthiness. MCL 712A.19a(e); MSA 27.3178(598.19a)(e). Nor was the court mistaken in its decision to place the child Marci in foster care.

Affirmed.