# STATE OF MICHIGAN

# COURT OF APPEALS

In re I. R. CONNELL, Minor.

UNPUBLISHED
November 20, 2018

No. 342560
Grand Traverse Circuit Court
Family Division
LC No. 16-004215-NA

Before: MURPHY, P.J., and O'CONNELL and BECKERING, JJ.

PER CURIAM.

The trial court issued an order terminating respondent-father's parental rights to his son, IRC, under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist) and (g) (failure to provide proper care or custody). Respondent-father appeals as of right, arguing that termination was not appropriate under these grounds. Respondent-father further contends that he was denied the opportunity to participate in services as required under the case service plan due to multiple terms of incarceration and his impoverished status. We affirm.

## I. FACTS

In May 2016, respondent-father pleaded guilty to resisting or obstructing a police officer, MCL 750.81d, and engaging in disorderly conduct, MCL 750.167. He violated his bond when a preliminary breath test detected the presence of alcohol in his system. Respondent-father served a 27-day term in jail as a result, and he was required to serve a period of 12 months' probation.

Following his release, respondent-father was present when IRC was born.[1] The child was removed from his parents' care that day. At the time, respondent-father was homeless and struggled with drug and alcohol abuse. IRC was placed in relative care with the maternal great-grandmother, who was already caring for IRC's older half-sister. The trial court authorized the initial petition against both of IRC's parents. In June 2016, the child's mother entered a plea of admission to an allegation in the petition that the children would be at imminent risk if they were to remain in her custody. On the basis of this plea, the trial court found that statutory grounds existed sufficient to take jurisdiction over IRC and his half-sister.

---

[1] Respondent-father signed an affidavit of parentage in September 2016, and, in December 2016, an order was entered recognizing him as IRC's legal father.

-1-

In August 2016, respondent-father violated his probation. Subsequently, he was twice found at a public beach in a state of apparent intoxication. The Child Protective Services (CPS) worker involved with this case contacted respondent-father's probation officer to determine his living situation, and it was discovered that he had failed to report changes in his residence. The CPS worker informed the probation officer of the discrepancy, and respondent-father was arrested, at what would have been his second parenting-time visit, with six marijuana joints in his possession.

In October 2016, respondent-father entered a plea of admission to an allegation in the third amended petition, which stated that he was "temporarily unable to provide proper care and custody of [IRC] due to [his] need for stable housing and substance abuse treatment." Respondent-father also admitted that he used marijuana and pills of an unidentified nature. The trial court accepted respondent-father's plea, finding that jurisdictional grounds existed relative to respondent-father and IRC. Respondent-father then pleaded guilty to the probation violations, and he was sentenced to one year in jail. A parent agency treatment plan (PATP) was created to assist respondent-father in addressing the issues that were an obstacle to reunification with his son. IRC and his half-sister were transferred to the care of their maternal grandparents. By the end of the year, respondent-father had failed or actively refused to participate in several drug tests. On two occasions, respondent-father refused to participate in drug tests, but admitted that he would have tested positive for THC had he participated.

Respondent-father was diagnosed with bipolar disorder and alcohol use disorder, but was unable to receive the medications he needed while incarcerated without Medicaid assistance. He was also unable to obtain psychological evaluations, and the jail would not allow mental health specialists to visit with him weekly to address his needs. The Department of Health and Human Services (DHHS) repeatedly sent housing and Medicaid applications for respondent-father to complete.

After his release from jail, respondent-father maintained sporadic contact with the DHHS using unknown phone numbers. In May 2017, he was incarcerated for three weeks as a result of his failure to pay child support and fines. In June 2017, the trial court determined that the goal should be changed from reunification to adoption, and it instructed the DHHS to move forward in filing a petition to terminate respondent-father's parental rights. Between April and June 2017, respondent-father canceled or otherwise failed to attend 13 visitation dates with IRC. Respondent-father attended an initial mental health assessment, but could not begin to receive services thereafter because he could not afford them without Medicaid. For the same reason, respondent-father was unable to attend substance abuse classes for which he had signed up. Respondent-father informed the foster care worker that he had completed the necessary documents to procure Medicaid, but was waiting to receive a response. Ultimately, he never attended the counseling or substance abuse classes that he signed up for; nor did he attend Alcoholics Anonymous (AA) or Narcotics Anonymous (NA) as he said he would. He also failed to appear for two psychological evaluations that were scheduled for him in November 2017. After August 2017, respondent-father stopped participating in parenting time altogether. Respondent-father also failed to attend a psychological evaluation scheduled in September 2017.

Respondent-father was approved for Medicaid in November 2017, and he was able to receive medication and undergo a psychological evaluation. The evaluating doctor noted that

respondent-father admitted that he was taking medications to address his bipolar disorder, but was not doing so consistently, as he did not care for the side effects of the medication. Additionally, respondent-father did not feel that he needed ongoing mental health treatment at that time. The doctor indicated that because of this, respondent-father was likely to continue relapsing and experiencing difficulties in combating substance abuse.

Respondent-father continued to struggle with maintaining employment and housing and otherwise failed to comply with his PATP. He was evicted from his temporary housing and stopped attending his outpatient treatment program. Throughout 2017, respondent-father failed to participate in multiple hearings, failed numerous drug tests, and actively refused to sign multiple copies of the PATP.

On January 11, 2018, petitioner filed a supplemental petition to terminate respondent-father's parental rights to IRC. More drug tests were conducted in late January of 2018, which tested positive for cannabis and cannabinoids, but tested negative for some of the medications that respondent-father was prescribed. Respondent-father provided the foster care worker with a lease for the Whiting Hotel, where he was last known to reside. He reported that he was going to begin employment at a Sam's Club, but the foster care worker was unable to verify this claim. On February 8, 2018, a termination hearing was held. Respondent-father did not attend. On February 9, 2018, the trial court terminated respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*) and (g).

## II. STANDARD OF REVIEW

This Court reviews for clear error the trial court's factual findings and ultimate determinations that the statutory grounds for termination of parental rights have been proven by clear and convincing evidence. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010); MCR 3.977(K). Likewise, this Court reviews for clear error the trial court's factual findings regarding whether reasonable efforts were made toward reunification of the family. *In re Fried*, 266 Mich App 535, 541-543; 702 NW2d 192 (2005). A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake. *In re McCarrick/Lamoreaux*, 307 Mich App 436, 463; 861 NW2d 303 (2014). That is, the reviewing court must find the trial court's decision "more than just maybe or probably wrong." *In re Trejo Minors*, 462 Mich 341, 356; 612 NW2d 407 (2000).

## III. ANALYSIS

A court may terminate the parental rights of a respondent if the court finds, by clear and convincing evidence, that at least one of the statutory grounds listed in MCL 712A.19b(3) has been established. MCL 712A.19b(3). The trial court must also find that termination of parental rights is in the child's best interests. MCL 712A.19b(5).

Respondent-father first argues that the trial court erred when it held that termination was appropriate under the statutory grounds outlined in MCL 712A.19b(3)(c)(*i*) and (g). MCL 712A.19b(3)(c)(*i*) states, in part, that termination is appropriate if

[t]he parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . :

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

In this case, adjudication resulted primarily because of issues pertaining to respondent-father's homelessness and substance abuse. Over the course of these proceedings, these issues were not alleviated. It is true that respondent-father did acquire temporary housing several times since the beginning of the case. However, by the time of the termination hearing, respondent-father was unable to show that he was any closer to acquiring permanent housing than he was in June 2016. Moreover, respondent-father demonstrated time and time again that he was unable to successfully combat his desire to engage in substance abuse. Respondent-father never attended AA or NA classes as he initially promised. He tested positive for THC several times over the course of these proceedings. Indeed, even when respondent-father refused to take drug tests, he repeatedly admitted that he would have tested positive for THC had he voluntarily participated. On multiple occasions from September 2016 to November 2017, respondent-father was seen in a state of apparent intoxication in Traverse City while in the company of other intoxicated persons. Further, respondent-father declined multiple offers to set up DHHS services, substance abuse services, and other helpful services. Although respondent-father completed an inpatient rehabilitation program, he ultimately failed to complete the subsequent outpatient treatment program. For these reasons, the trial court did not err when it held that termination was appropriate under MCL 712A.19b(3)(c)(*i*). In fact, such evidence also clearly and convincingly supports the trial court's reliance on MCL 712A.19b(3)(g) as an additional ground for terminating respondent-father's parental rights. See *In re Williams*, 286 Mich App 253, 272-273; 779 NW2d 286 (2009).

Respondent-father next advances the unpreserved assertion that petitioner impermissibly created the grounds for termination when a CPS worker reported him to his probation officer, resulting in his incarceration. When this Court considers an unpreserved issue, review is limited to "plain error affecting substantial rights." *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008). This Court has explained:

Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings. When plain error has occurred, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant *or* when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." [*Id.* at 9 (alterations in original).]

This Court has previously held that "when the state deliberately takes action with the purpose of virtually assuring the creation of a ground for termination of parental rights, and then proceeds to seek termination on that very ground, the state violates the due process rights of the parent." *In re B & J*, 279 Mich App 12, 19-20; 756 NW2d 234 (2008) (quotation marks and brackets omitted). In this case, the CPS worker's decision to notify respondent-father's

-4-

probation officer of his violative conduct occurred in September 2016, more than a year before the issuance of the order terminating respondent-father's parental rights. This single act is a far cry from the petitioner's conduct in *B & J*, 279 Mich App at 14-16. Indeed, even in prison, respondent-father was provided with the opportunity to engage in some services, including a 12-step program, Bible study and private sessions with pastors, AA sessions, substance abuse and parenting classes, and a life skills course. Although respondent-father did not participate in some of these services because he did not agree with certain religious components, this should not have precluded his participation in every listed program. Outside of jail, respondent-father was also given access to drug tests, mental health assessments, substance abuse classes, counseling, AA and NA sessions, psychological evaluations, inpatient treatment, and outpatient treatment. The record does not contain any indication that respondent-father's unwillingness to participate in or complete services, inability to combat his issues of substance abuse or homelessness, or failure to attend prior proceedings or visitation with his son were caused by any act taken by petitioner.

Respondent-father next makes the unpreserved assertion that he was denied a meaningful opportunity to receive appropriate services while incarcerated. In effect, respondent-father argues that he was not afforded the opportunity to meaningfully participate in the case service plan while incarcerated. " 'Reasonable efforts to reunify the child and family must be made in *all* cases' except those involving aggravated circumstances." *Mason*, 486 Mich at 152, quoting MCL 712A.19a(2). None of the exceptions to petitioner's obligation to make such reasonable efforts applies in this case. See MCL 712A.19a(2)(a)-(d). In *Mason*, 486 Mich at 156-157, the Court held that the lack of signatures confirming that the respondent participated in developing the PATP—or even received copies of such documents—suggested that the petitioner may have been less than conscientious about fulfilling its statutory duty to offer services. Here, the record indicates that respondent-father was repeatedly given copies of the PATP. Only one PATP (drafted the day before the termination hearing) might not have reached respondent-father, although it appears that attempts to contact him were made. Respondent-father received all other copies of the PATP discussed on the record and either did sign them or actively refused to sign them of his own accord.

Further, there is no indication that petitioner failed to maintain contact with respondent-father while he was incarcerated. To the contrary, it appears that petitioner maintained frequent contact with respondent-father during his multiple periods of incarceration to apprise him of the PATP, to send him housing and Medicaid applications, and to verify the completion of services. Respondent-father did not attend hearings that were conducted on June 24, 2016, April 11, 2017, September 14, 2017, February 8, 2018, and February 9, 2018. Respondent-father was not incarcerated during these hearings, and there was no evidence presented that he failed to attend them due to lack of notice. Moreover, testimony established that while respondent-father was incarcerated, he was able to engage in at least some services. Unlike the respondent in *Mason*, 486 Mich at 163, respondent-father had not arranged for adequate housing or a legal source of income following his release from prison. As previously discussed, respondent-father ultimately failed, over the course of these proceedings, to make real progress in securing permanent housing or permanent employment up to the date of termination.

Further still, unlike in *Mason*, the trial court did not terminate respondent's parental rights "on the basis of 'circumstances and missing information directly attributable to

respondent's lack of meaningful prior participation.' " *Mason*, 486 Mich at 159-160, quoting *In re Rood*, 483 Mich 73, 119; 763 NW2d 587 (2009). In fact, reunification remained the goal of the proceedings for some time. It was not until the eighth hearing that the trial court determined that the more appropriate goal with respect to IRC was adoption.

" 'The time for asserting the need for accommodation in services is when the court adopts a service plan . . . .' " *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012), quoting *In re Terry*, 240 Mich App 14, 27; 610 NW2d 563 (2000).[2] In this case, respondent-father gives no indication that he raised an objection to services offered throughout the duration of the case, and a thorough review of the record has brought none to light. Additionally, respondent-father was not incarcerated for the entirety of the case. From the record, it appears that respondent-father was incarcerated for approximately 210 days in total since the beginning of these proceedings. This allowed respondent-father approximately 386 days *outside of jail* to participate in services. For these reasons, there is no "hole" in the evidentiary record. See *Mason*, 486 Mich at 160.

Respondent-father lastly argues that he was given an inadequate opportunity to participate in services or obtain appropriate mental health treatment because he was indigent and unable to acquire Medicaid until shortly before the termination hearing. A trial court may not terminate a respondent's parental rights to his or her child merely because the parent is impoverished. *In re Clausen*, 442 Mich 648, 689; 502 NW2d 649 (1993), quoting *Herbstman v Shiftan*, 363 Mich 64, 67-68; 108 NW2d 869 (1961) (" 'It is a well-established principle of law that the parents, whether rich or poor, have the natural right to the custody of their children. The rights of parents are entitled to great consideration, and the court should not deprive them of custody of their children without extremely good cause.' "). See also *In re Sterling*, 162 Mich App 328, 339; 412 NW2d 284 (1987) (holding that it is inappropriate for a court to take jurisdiction over a minor child under MCL 712A.2[b] and to subsequently remove the child from his or her parent "merely because [the parent is] without financial means to act").

In this case, respondent-father was continually sent Medicaid application forms while incarcerated. It appears that respondent-father did not inform petitioner that he had actually completed an application until approximately June 2017. Even if he had filed a Medicaid application before then, it appears that the only services that he could not receive without Medicaid assistance were mental health assessments and certain substance abuse classes in jail. Respondent-father did not appear to have been precluded from participating in all services without Medicaid. In fact, the probation officer testified that all services offered *while in jail* should have been free to inmates like respondent-father. Respondent-father has not shown that he could not participate in the case service plan by reason of poverty.

Additionally, respondent-father has not shown that he would have complied with the case service plan and demonstrated sufficient improvement to warrant reunification with IRC if he were able to obtain medication. Respondent-father had more than two months to demonstrate

---

[2] The Michigan Supreme Court recently expressed disapproval of this rule, but declined to overturn it. *In re Hicks*, 500 Mich 79, 88-89; 893 NW2d 637 (2017).

that he could make *some* improvements after receiving medication for his bipolar disorder. He failed to do so. Indeed, according to witness testimony, respondent-father was not taking his medications consistently even after he received Medicaid assistance. Moreover, as previously discussed, the trial court did not terminate respondent-father's parental rights on the basis of his impoverished status. The trial court properly outlined its findings under MCL 712A.19b(3)(c)(*i*) and (g), none of which concerned respondent-father's financial situation.

Affirmed.

/s/ William B. Murphy
/s/ Peter D. O'Connell
/s/ Jane M. Beckering