*In re* ANDESON

Docket No. 90182. Submitted August 4, 1986, at Grand Rapids. Decided October 21, 1986.

The Kent Probate Court, Randall J. Hekman, J., terminated Marshell Andeson's parental rights to the minor child Michael John Andeson on grounds of neglect, abandonment and inability to provide a fit home. Andeson was not personally present at the hearing but was represented by counsel. Andeson filed a petition for rehearing alleging that he had not been personally served with a summons and a copy of the petition for termination of parental rights following an earlier adjournment of the hearing. Rehearing was denied. Andeson appealed.

The Court of Appeals *held:*

1. The probate court did not err in denying Andeson's motion for rehearing. Andeson received proper notice of an earlier hearing and agreed to an adjournment of the proceedings. Furthermore, testimony indicated that Andeson was advised of the new hearing date both by the probate court and by his own counsel. When the parties agreed to adjourn the first hearing, the jurisdiction of the probate court had already been established and the court was not required to personally serve respondent again.

2. The probate court did not abuse its discretion in finding that Andeson had not made regular and substantial efforts to support or communicate with the minor child and that he intended to abandon or desert the child or that Andeson was unable to provide a fit home by reason of neglect.

Affirmed.

REFERENCES

Am Jur 2d, Parent and Child §§ 3, 27, 31, 43.

Am Jur 2d, Process §§ 27 *et seq.,* 35.

Primary caretaker role of respective parents as factor in awarding custody of child. 41 ALR4th 1129.

Validity of state statute providing for termination of parental rights. 22 ALR4th 774.

See also the annotations in the Index to Annotations under Process and Service of Process and Papers.

1. PROCESS — PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — NOTICE.

> A respondent in a proceeding to terminate parental rights who has been personally served with a copy of the petition and a summons, appeared at the hearing, agreed to an adjournment of the proceedings and was advised of the date of the second hearing both by the probate court and his own counsel is not entitled to again be personally served with a copy of the petition and the summons.

2. PROCESS — PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — NOTICE.

> Adjournment of a termination of parental rights proceeding until a later date is not the equivalent of creating a new hearing or a review hearing that would require personal service of a summons or notice.

3. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — BURDEN OF PROOF.

> The party petitioning for termination of parental rights bears the burden of proving to the trial court by clear and convincing evidence that the termination of parental rights is warranted and must establish that the parent is unfit and is unable to become fit within a reasonable period of time.

4. PARENT AND CHILD — TREATMENT OF CHILDREN — EVIDENCE.

> How a parent treats one child is probative of how that parent may treat other children.

*David H. Sawyer,* Prosecuting Attorney, and *David R. Gersch,* Assistant Prosecuting Attorney, for the Department of Social Services.

*Jerry M. Beurkens,* for Marshell Andeson.

Before: HOOD, P.J., and D. E. HOLBROOK, JR., and W. R. PETERSON,* JJ.

H. HOOD, P.J. Respondent Marshell Andeson appeals as of right from the probate court order terminating his parental rights to the minor child Michael John Andeson pursuant to MCL 712A.19a(b), (e); MSA 27.3178(598.19a)(b), (e). At

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the same time the parental rights of the mother, Brenda Lee Merritt, and a putative father, Dennis Tolbert, who have not appealed, were also terminated. Following the termination order, respondent's petition for rehearing, which alleged that he had not been personally served with a summons and a copy of the petition for termination of parental rights following an earlier adjournment of the hearing, was denied. Respondent now appeals from this rehearing denial and challenges the court's termination decision as clearly erroneous. We affirm on both issues.

On May 28, 1985, a petition was filed stating that Brenda Merritt desired to voluntarily terminate her parental rights to Michael. The petition also alleged that Michael's putative father, either respondent or Tolbert, was unable to provide a home by reasons of neglect or abandonment and that respondent had refused to engage in a treatment plan designed to help him become a nonneglectful parent. It was requested that all parental rights to Michael be terminated.

On June 6, 1985, the scheduled hearing on the petition was adjourned in order to update blood tests to determine paternity.[1] Although respondent had attended nearly all of the other neglect proceedings in this case, he was not present at the September 10, 1985, proceeding on the petition to terminate his parental rights. The probate court denied respondent's motion for rehearing, finding that he had received proper notice and summons of the termination hearing, that the June 6, 1985, hearing had been adjourned by agreement of the parties and that respondent had been sent notice

[1] Blood tests showed respondent's likelihood of paternity was 98.47 percent. Testimony at the September 10, 1985, hearing indicated that respondent had signed an acknowledgment of paternity on April 28, 1983, shortly after Michael's birth and that he had been under court order to provide support for Michael.

of the September 10, 1985, hearing from the probate court and from his attorney through the regular mail.

On appeal, respondent argues that even though he was personally served with the petition and summons for the June 6, 1985, hearing, under MCL 712A.20; MSA 27.3178(598.20) and MCL 712A.13; MSA 27.3178(598.13) he was entitled to again be personally served with a petition and a summons for the September 10, 1985, neglect proceedings. This Court recognizes the compelling interest of a respondent's parental rights and the importance of the respondent's presence during termination proceedings. *In the Matter of Render,* 145 Mich App 344; 377 NW2d 421 (1985). On the facts of this case, however, the probate court did not err by denying respondent's motion for rehearing. Respondent received proper notice of the June 6, 1985, hearing and agreed to an adjournment of the proceedings. Despite respondent's representation that he had no actual notice of the September 10, 1985, proceeding, the probate court found that respondent did, in fact, receive notice.

Testimony indicated that, following the parties' agreement to adjourn the June 6, 1985, proceedings, respondent was sent letters by regular mail from both the probate court and from his attorney notifying him of the September 10, 1985, hearing date. At the September 10, 1985, hearing, respondent's attorney indicated that respondent knew of the hearing date. Counsel did not request another adjournment in order to attempt to effectuate respondent's appearance at the termination proceeding.

We conclude that despite the extensive statutory provisions requiring service of notice or service of summons in parental rights termination cases, these provisions should not be construed to require

personal service in the instant situation where the hearing was simply adjourned until a later date. Adjournment of a proceeding until a later date is not the equivalent of creating a new hearing or a review hearing that would require personal service of a summons or notice. Respondent's reliance upon *In re Petrovich,* 222 Mich 79; 192 NW 657 (1923), which stands for the proposition that juvenile court proceedings are void where there is a failure to serve a summons in a neglect proceeding, is misplaced since this is not a case where the probate court failed to give the requisite notice in order to acquire jurisdiction. When the parties agreed to adjourn, the jurisdiction of the probate court had already been established and the court was not required to personally serve respondent again.

Respondent also argues that the court abused its discretion when it found that he had not made regular and substantial efforts to support or communicate with the child and that he intended to desert or abandon him. Respondent further contends that the court abused its discretion in finding that he was unable to provide a fit home by reason of neglect despite the court's failure to ever consider placement of Michael with respondent in any meaningful sense. We will discuss these arguments together.

This Court will not reverse an order terminating parental rights unless the trial court's findings are clearly erroneous. *In re Cornet,* 422 Mich 274; 373 NW2d 536 (1985). A finding of fact is clearly erroneous when, despite the existence of evidence to support it, the reviewing court after examining the entire evidence is left with a definite and firm conviction that a mistake has been made. *Tuttle v Dep't of State Highways,* 397 Mich 44; 243 NW2d 244 (1976). The party petitioning for termination

of parental rights bears the burden of proving to the trial court by clear and convincing evidence that the termination of parental rights is warranted. *In the Matter of Harmon,* 140 Mich App 479; 364 NW2d 354 (1985). The petitioner must establish that the parent is unfit and is unable to become fit within a reasonable period of time.

Respondent's parental rights were terminated under MCL 712A.19a(b), (e); MSA 27.3178(598.19a)(b), (e). Section 19a(b) provides that the court may place a child in the permanent custody of the court if the court finds:

> The child is left with intent of desertion and abandonment by his parent or guardian in the care of another person without provision for his support or without communication for a period of at least 6 months. The failure to provide support or to communicate for a period of at least 6 months shall be presumptive evidence of the parent's intent to abandon the child. If, in the opinion of the court, the evidence indicates that the parent or guardian has not made regular and substantial efforts to support or communicate with the child, the court may declare the child deserted and abandoned by his parent or guardian.

Testimony at the September 10, 1985, hearing strongly supports the trial court's conclusion that respondent did not make regular and substantial effort to support or communicate with Michael.

Respondent stopped paying support after November 17, 1983, and was over $9,000 in arrears in support and medical payments for Michael and his other son, Marshall, at the time of the hearing. Although he attended approximately sixty percent of the scheduled visitations, he never appeared for visitation after June 7, 1985, three months prior to the hearing. While respondent sometimes exhib-

ited "real good quality playtime" with Michael, at other times he paid no attention and sometimes, after he had been drinking, he fell asleep on the floor. The foster care caseworker found a "basically minimal" relationship between the father and son with Michael viewing respondent more as a "special friend" than as a true parent. Respondent never made any effort to establish a home in which Michael could be placed.

Although respondent had visited Michael within six months prior to the hearing, respondent provided no support for Michael for well over 1½ years. Section 19a(b) states that failure to provide support *or* to communicate shall be presumptive evidence of a parent's intent to abandon a child. Thus, we cannot say that the probate court clearly erred in terminating respondent's parental rights under § 19a(b).

Respondent's parental rights were also terminated under section 19a(e). Section 19a(e) provides that the court may place a child in the permanent custody of the court if the court finds: "The parent or guardian is unable to provide a fit home for the child by reason of neglect." The probate court opined:

> Further, the Court finds by clear and convincing evidence and pursuant to Section 19a(e) of the Juvenile Code, that the child has been made a temporary ward of the court and remains in foster care and further that the evidence establishes or seriously threatens the neglect of the child for the long-run future. The testimony we heard today, consistent with all the other factors known to the Court, is that if this child were placed in the father's custody there would be an extremely high probability of future abuse. Mr. Andeson, based on the best evidence the Court has before it, was the primary cause of a sibling's death by the inten-

tional or grossly negligent actions on his part. And I feel that any child placed with him, particularly if Mr. Andeson was still involved in abusing alcohol, would likely result in injury and/or neglect of that child. Thus, the child would not be safe in his custody.

At the hearing, the foster care caseworker told the court that alcohol abuse was linked to respondent's obnoxious behavior at the Family Living Center and to his being asked to leave parenting classes. The worker was concerned about respondent's ability to meet Michael's emotional needs and feared that Michael would not be physically safe in respondent's care. Respondent had a tendency to be abusive, obnoxious or belligerent after consuming alcohol.

Most telling of all was Brenda Merritt's testimony regarding respondent's abuse of Michael's fourteen-month-old brother, Markus, whose death two days prior to Michael's birth may have been caused by respondent. According to Merritt, respondent, who was angered at Markus's refusal to stay in bed for a nap, threw him five feet through the air into the headboard of his bed. Shortly after that incident, Markus died of a brain injury. How a parent treats one child is certainly probative of how that parent may treat other children. *In the Matter of Futch,* 144 Mich App 163, 168; 375 NW2d 375 (1984); *In the Matter of LaFlure,* 48 Mich App 377, 392; 210 NW2d 482 (1973), lv den 390 Mich 814 (1973). Under the circumstances, we agree with the probate court that Michael's placement with respondent could result in injury or neglect and, accordingly, the trial court's finding that respondent's parental rights should be terminated under § 19a(e) was not clearly erroneous.

Considering all of respondent's arguments, we

find no abuse of the trial court's discretion in its decision to terminate respondent's parental rights. We affirm the decision of the probate court.

Affirmed.