*In re* WEBSTER

Docket No. 104006. Submitted April 21, 1988, at Grand Rapids. Decided July 18, 1988. Leave to appeal applied for.

The Department of Social Services filed a neglect petition in the Newaygo Probate Court to take jurisdiction of Gerry Lee Webster, the child of May Webster and Howard John Lee Loss. The court took jurisdiction and placed the minor in temporary custody. On the same day respondent Webster executed a power of attorney delegating her parental powers regarding care, custody and property of the minor child to respondent Loss, and in his place to Agnes Sarah Loss. At the time this power of attorney was executed Mr. Loss had not acknowledged paternity. The court made various orders for the parents to engage in psychological evaluation and treatment. The parents refused to cooperate with the court or the social workers in the case. After notice of hearing, the court, Thomas J. Eggleston, J., terminated the parental rights to the child. The parents appealed.

The Court of Appeals *held:*

1. The execution of the power of attorney did not nullify the court's properly obtained jurisdiction.

2. Failure to affix the seal to the orders of the court served on the parents did not render those orders nonbinding.

3. The court had clear and convincing evidence of abandonment and neglect to support its termination decision. The evidence showed that, despite efforts to encourage and accommodate them, the parents failed to make any substantial effort to visit or communicate with the child for over one year, thus proving abandonment. The evidence of neglect was also clear, as was the evidence that a return of the child to the care of the parents would jeopardize the child's future welfare.

Affirmed.

1. INFANTS — JUVENILE CODE — JUDICIAL CONSTRUCTION.

The juvenile code is to be liberally construed in order to effectu-

REFERENCES

Am Jur 2d, Parent and Child §§ 7, 34, 35.

Validity of state statute providing for termination of parental rights. 22 ALR4th 774.

ate the child's welfare and the state's best interest (MCL 712A.1; MSA 27.3178[598.1]).

2. PARENT AND CHILD — ABANDONMENT — EVIDENCE — PRESUMPTIONS.

  Failure to provide support or to communicate with one's child for a period of six months is deemed presumptive evidence of parental intent to abandon the child (MCL 712.19a[b]; MSA 27.3178[598.19a][b]).

3. PARENT AND CHILD — NEGLECT — CULPABILITY.

  A probate court need not read a culpability or blameworthiness requirement into the statute providing for permanent custody of foster children whose parent or guardian is unable to provide a fit home by reason of neglect, the statute being to protect a child from an unfit home; real evidence of longtime neglect or serious threat to the child's future welfare are sufficient to justify termination of parental rights based on neglect (MCL 712A.19a[e]; MSA 27.3178[598.19a][e]).

*Graydon W. Dimkoff, P.C.* (by *Graydon W. Dimkoff*), for Gerry L. Webster.

*Edward E. Cruzan,* for May Webster and Howard John Lee Loss.

Before: WEAVER, P.J., and McDONALD and W. R. PETERSON,* JJ.

WEAVER, P.J. Respondents appeal as of right from a probate court order terminating the parental rights to their minor child. We affirm.

I

On September 23, 1985, respondent May Webster gave birth out of wedlock to Gerry Lee Webster. Although respondent Webster appears to have been living with the father, Howard John Lee Loss, at the home of Mr. Loss's parents, Mr. Loss refused to acknowledge paternity until July 8, 1986, after these proceedings were underway.

* Circuit judge, sitting on the Court of Appeals by assignment.

These proceedings were initiated pursuant to MCL 712A.2 (b)(1) and (2); MSA 27.3178 (598.2)(b)(1) and (2) with a neglect petition filed on June 18, 1986, by a Department of Social Services children's protective services worker. The child was placed in temporary custody that same day. On the same day respondent Webster also executed a power of attorney delegating her parental powers regarding care, custody and property of the minor child to respondent Loss, and in his place to Agnes Sarah Loss. At the time this power of attorney was executed, both persons were nonrelatives, since Mr. Loss had not yet acknowledged paternity.

At a preliminary hearing before the Newaygo Probate Court referee on June 19, 1986, with both parents in attendance, the children's protective services worker alleged that the petition was based on (1) emotional instability of the mother, who had twice tried to jump out of a moving truck, (2) the mother's lack of care for the child, whom she entrusted to others also appearing unable to care for the child, and (3) inadequate housing arrangements for the child, who was sleeping in the closet on dirty blankets thrown on a filthy floor smelling of animal urine and littered with dog food and cereal boxes.

Attorneys were appointed for respondents and the minor child. At a formal adjudication held on June 30, 1986, respondent Webster's attorney stipulated to the fact that the child was malnourished and experiencing development problems. The court accepted respondent Webster's plea of no contest to the allegation that she had twice tried to jump out of a moving truck. The court took jurisdiction of the minor child, ordered respondent Webster to undergo psychological counseling, and ordered an-

other hearing to determine what further disposition should be made.

On the date that respondent Loss executed an acknowledgment of paternity, July 8, 1986, respondent Webster requested a different attorney and a rehearing on the original petition. On July 22 and August 28, 1986, DSS filed amended petitions alleging, inter alia, that the minor child was malnourished, that respondent Webster had called the DSS office insisting that the Sheriff's Department ordered the return of the minor child to them, that respondents had requested a court-appointed attorney for the minor child's animals, and that respondents told a Newaygo resident that their child had been taken from them so his body parts could be used for organ donations.

At the second formal adjudication on September 8, 1986, held on respondents' motion, respondents failed to appear and their attorney's request for an adjournment was denied. There was testimony indicating that the minor child appeared to have been malnourished while in respondents' care. The probate court found that the minor child was physically neglected, that respondents had exhibited "bizarre thinking," and that the child was in danger of ongoing neglect. The court continued the minor child's temporary wardship subject to the respondents' being evaluated.

At the disposition hearing held on October 6, 1986, respondents again failed to appear. After a Bethany Christian Services social worker, Dale Painter, testified that respondents had significant psychological problems, the court ordered that both parents be psychologically evaluated and comply with recommended treatment. The court also ordered the parents to work with Bethany Christian Services in developing a child-care plan,

to schedule supervised visitations and to establish a stable, appropriate residence.

Respondents appeared at the review hearing held on March 2, 1987, and their testimony was taken. Respondent Loss denied having received a copy of the order following the dispositional hearing, but asserted that he felt no obligation to comply with the court's orders because they had been sent without the court's seal. Respondent Webster denied having received the court's order requiring her cooperation with Bethany Christian Services and also denied receiving a letter from her attorney stating that she must comply with Bethany's recommendations, but testified she would plead the Fifth Amendment when asked if she was aware that the court had ordered a psychological evaluation.

Mr. Painter's testimony established that, despite all efforts to accommodate them, respondents had failed to follow the court's order of October 6, 1986, refusing to cooperate with him in any manner. The juvenile register testified that in accordance with normal practice she had sent court orders by regular mail to respondents at their proper address and that nothing was returned. The probate court stated that it was still possible for the family to be reunited if respondents would cooperate and undergo a psychological evaluation.

At the second review hearing held on June 29, 1987, however, respondents did not appear despite a letter from their attorney and personal service on them. It was noted that respondents had persisted in their refusal to cooperate and had made no contact with the child or with the supervising agency.

A petition for termination of parental rights was filed by Bethany Christian Services on July 1, 1987, and the termination hearing was held on

September 18, 1987. Respondents' attorney informed the court of his unsuccessful efforts to secure respondents' appearance at the second review hearing which had been scheduled for June 29, 1987. The guardian ad litem informed the court that he had written to repondents at their proper address, informing them of the time and place for the termination hearing and requesting that they contact him. Respondent Webster never contacted him, and respondent Loss failed to appear after calling and scheduling an appointment. Mr. Painter told the court of respondents' failure to comply with the plan regarding court-ordered psychological evaluations and visitation although they and other family members had known of it since at least January of 1987.

The court ordered respondents' parental rights terminated on grounds of abandonment and neglect pursuant to MCL 712A.19a(b); MSA 27.3178(598.19a)(b) and MCL 712A.19a(e); MSA 27.3178(598.19a)(e). In the best interests of the child the court then entered an order of permanent custody pursuant to MCL 712A.20; MSA 27.3178(598.20). Respondents appeal as of right.

II

We are unpersuaded by respondents' argument on appeal that, because the mother executed the power of attorney of June 18, 1986, the probate court never acquired jurisdiction over the minor child. MCL 712A.2(b); MSA 27.3178(598.2)(b) confers upon the juvenile division of the Michigan probate courts jurisdictional power over a minor child:

(1) Whose parent or other person legally responsible for the care and maintenance of the child,

when able to do so, neglects or refuses to provide proper or necessary support, education as required by law, medical, surgical, or other care necessary for his or her health or morals, or who is deprived of emotional well-being, or who is abandoned by his or her parents, guardian, or other custodian, or who is otherwise without proper custody or guardianship.

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, or other custodian, is an unfit place for the child to live in.

We believe that the evidence submitted pursuant to filing the neglect petition was sufficient to permit the probate court's jurisdiction under the above section and that respondent Webster's execution of a power of attorney was ineffective to thwart this jurisdiction.

The jurisdiction statute focuses on the physical and mental well-being of the minor child and the child's possibly unfit home environment. This case is distinguishable from *In re Taurus F,* 415 Mich 512; 330 NW2d 33 (1982), reh den 417 Mich 1104 (1983), cited by respondents, since in *Taurus F* the respondent had entrusted her child to a responsible relative in a home suitable for foster care. *Id.* at 542-543. Here, respondent Loss could not properly even be considered a relative at the time the power of attorney was executed, since he continued to deny paternity until July 8, 1986. Further, our review indicates that respondent Webster's execution of the power of attorney brought about no change in the child's actual custodial environment. Therefore we conclude that such execution was ineffective to nullify the court's properly obtained jurisdiction.

III

Respondents also argue that the orders of the

probate court were not binding on them because the orders did not bear the court's seal as required by MCL 712A.18(4); MSA 27.3178(598.18)(4).[1] We disagree with this contention.

Due to what appears to have been a clerical mistake, the court's orders did not bear the seal of the probate court. However, there is no question but that respondents received notice of the various hearings, were given several opportunities to be heard, and had the court's genuine orders mailed to them by first class mail, none of which were returned. The record provides ample evidence not only of the types of notice which respondents received but also of respondents' repeated refusal to cooperate with all persons involved in the proceeding. Such refusal to cooperate included respondents' failure to appear for the review hearing of June 29, 1987, even after being notified by their attorney and after being personally served.

While noting that courts should be vigilant to affix seals where the statutes so require, in this case the failure to affix a seal was not fatal to the proceeding's validity. See *Lyon v Baldwin,* 194 Mich 118, 123; 160 NW2d 428 (1916); *United States v Campbell,* 761 F2d 1181, 1184-1185 (CA 6, 1985). This is because respondents never called into question the genuineness of the documents

---

[1] MCL 712A.18(4); MSA 27.3178(598.18)(4) provides:

An order directed to a parent, or a person other than the child, shall not be effectual and binding on the parent or other person unless opportunity for hearing has been given pursuant to issuance of summons or notice as provided in sections 12 and 13 of this chapter, and until a copy of the order, bearing the seal of the court, is served on the parent or other person, personally or by first class mail, to the parent's or other person's last known address, as provided in section 13 of this chapter.

which the court issued and which respondents received. Hence such genuineness was never at issue. At issue was only whether respondents could be held to compliance.

Each child coming within the jurisdiction of the juvenile division of the probate court is to be provided with the care, guidance and control conducive to the child's welfare and the state's best interest, and the juvenile code is to be liberally construed in order to effectuate this purpose. MCL 712A.1; MSA 27.3178(598.1); *People v Dunbar,* 423 Mich 380, 386; 377 NW2d 262 (1985), reh den 424 Mich 1201 (1985). Here, clear and convincing evidence supported the probate court's decision to terminate respondents' parental rights in the best interests of the child. Therefore the failure in this case of a mere form—omission of a seal affixed to the court's orders—should not be given priority over the child's welfare which is best served in affirming the court's decision.

IV

We also disagree with respondents' contention that the probate court lacked the clear and convincing evidence of abandonment and neglect which was needed to support an order of termination.

Failure to provide support or to communicate for a period of six months is deemed presumptive evidence of parental intent to abandon a child. MCL 712A.19a(b); MSA 27.3178 (598.19a)(b);[2] *In re*

---

[2] MCL 712A .19a(b); MSA 27.3178(598.19a)(b) provides:

Where a child remains in foster care in the temporary custody of the court following the initial hearing provided in section 19, the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:

*  *  *

*Andeson,* 155 Mich App 615, 620-621; 400 NW2d 330 (1986). In this case, testimony established that, despite all efforts to encourage and accommodate them, respondents failed to make any substantial effort to visit or communicate with their child for over one year, or twice the period deemed presumptive of abandonment. Hence clear and convincing evidence supported the probate court's finding, pursuant to MCL 712A.19a(b); MSA 27.3178(598.19a)(b), that termination of parental rights was warranted on grounds of abandonment.

The probate court also properly terminated respondents' parental rights on grounds of neglect pursuant to MCL 712A.19a(e); MSA 27.3178(598.19a)(e).[3] It was unnecessary for the court to read into the statute a culpability or blameworthiness requirement, the purpose of the statute being to protect a child from an unfit home. *In re Sterling,* 162 Mich App 328, 340-341; 412 NW2d 284 (1987), conflict cert den, 429 Mich 1210 (1987). Real evidence of longtime neglect or

(b) The child is left with intent of desertion and abandonment by his parent or guardian in the care of another person without provision for his support or without communication for a period of at least 6 months. The failure to provide support or to communicate for a period of at least 6 months shall be presumptive evidence of the parent's intent to abandon the child. If, in the opinion of the court, the evidence indicates that the parent or guardian has not made regular and substantial efforts to support or communicate with the child, the court may declare the child deserted and abandoned by his parent or guardian.

[3] MCL 712A.19a(e); MSA 27.3178(598.19a)(e) provides:

Where a child remains in foster care in the temporary custody of the court following the initial hearing provided in section 19, the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:

\* \* \*

(e) The parent or guardian is unable to provide a fit home for the child by reason of neglect.

serious threat to the child's future welfare was sufficient to justify termination of parental rights based on neglect. *In re Parshall,* 159 Mich App 683, 689; 406 NW2d 913 (1987), lv den 428 Mich 909 (1987).

Here, petitioner met its burden to prove by clear and convincing evidence that termination of parental rights was warranted. *In re LaFlure,* 48 Mich App 377, 386; 210 NW2d 482 (1973), lv den 390 Mich 814 (1973). The evidence showed that the child had been living with respondents in an unfit home amid animal and other filth, with inadequate sleeping arrangements, and was malnourished. The evidence also exposed respondents' bizarre ideation and behavior, their refusal to alter their conduct and improve the child's living conditions, and their refusal to submit to psychological evaluation and counseling or cooperate with the court in any manner at all. Thus it is clear that a return to respondents' care would have jeopardized the child's future welfare. *Fritts v Krugh,* 354 Mich 97, 116; 92 NW2d 604 (1958). The probate court's finding of neglect was supported by clear and convincing evidence and will not be reversed. *Sterling, supra* at 334-335.

Affirmed.