*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re SJS, Minor.

UNPUBLISHED
June 2, 2022

No. 358039
Wayne Circuit Court
Family Division
LC No. 2017-002093-NA

Before: BORRELLO, P.J., and SHAPIRO and HOOD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her child, SJS, pursuant to MCL 712A.19b(3)(a)(*ii*), (g), (i), and (j). We affirm.

## I. BACKGROUND

In 2018, the trial court terminated respondent's parental rights to six children primarily because she knew that the father to five of those children, D. Jones, had sexually and physically abused one of the children and she took no action to protect the children from further abuse.[1] We affirmed that decision, explaining in part as follows:

> Respondent-mother placed all of the minor children at an "unreasonable risk of harm" by continuing to live with respondent-father even though she knew that respondent-father sexually abused SLMJ. According to SLMJ, respondent-father kissed her, performed oral sex on her, and had vaginal intercourse with her. While respondent-mother claims that she was unaware of the sexual abuse, SLMJ disclosed that respondent-mother witnessed respondent-father sexually abusing her. Respondent-mother did not inform the police. Respondent-mother did not move out of the home or demand that respondent-father leave. Respondent-mother did not take any steps to protect the minor children from respondent-father. In fact, respondents were still living together throughout the termination proceedings.

---

[1] There was also substantive evidence that Jones had sexually and physically abused another of respondents' minor children, CLJ.

despite substantial evidence of respondent-father's sexual abuse, respondent-mother maintained that a friend who lived in the home was responsible. [*In re Jackson/Jenkins/Jones*, unpublished per curiam opinion of the Court of Appeals, issued December 20, 2018 (Docket Nos. 343224 & 344259), p 4.]

Respondent and Jones had another child together who was born in 2018, and the trial court also terminated their parental rights to that child. Respondent did not appeal that order, but this Court affirmed the termination of Jones's parental rights to the child. *In re DLM Jones*, unpublished per curiam opinion of the Court of Appeals, issued December 12, 2019 (Docket No. 349258), unpub op at 2 n 1, 5.

The child at issue in this case, SJS, was born in 2019 to respondent and her new partner, D. Scott. In January 2020, the Department of Health and Human Services filed a petition to terminate respondent's parental rights to SJS. The child was placed with Scott pursuant to a safety plan that prohibited respondent from living in Scott's home. Over the course of the next year, respondent was uncooperative with caseworkers, failed to maintain contact with caseworkers, failed to provide reliable contact information, and caseworkers, family members, and even her own counsel often were unable to contact her.

The trial court held three pretrial hearings and a four-day hearing on the termination petition. The hearings were conducted by Zoom videoconferencing because of the COVID-19 pandemic. Respondent appeared on the record on the first day of the termination hearing, but the court adjourned the hearing because of technical difficulties with respondent's connection. Respondent did not attend any of the other hearings. The trial court found that respondent "went AWOL" and had resorted to "couch surfing." It found that statutory grounds for termination were established pursuant to MCL 712A.19b(3)(a)(*ii*), (g), (i), and (j), and that termination of respondent's parental rights was in SJS's best interests. Accordingly, in July 2021, it terminated respondent's parental rights to the child.

## II. DUE PROCESS

Respondent first argues that the trial court violated her right to due process by terminating her parental rights without ensuring that she received proper service of the petition.[2]

"In a child protective proceeding, a summons must be served on any respondent and any nonrespondent parent." MCR 3.920(B)(2)(b). "Except as provided in subrule (B)(4)(b), a summons required under subrule (B)(2) must be served by delivering the summons to the party personally." MCR 3.920(B)(4)(a). "If the court finds, on the basis of testimony and affidavit, that personal service of the summons is impracticable or cannot be achieved, the court may by ex parte order direct that it be served in any manner reasonably calculated to give notice of the proceedings and an opportunity to be heard, including publication." MCR 3.920(B)(4)(b).

---

[2] This Court reviews de novo constitutional questions, including whether a party has been afforded due process. *In re Blakeman*, 326 Mich App 318, 331; 926 NW2d 326 (2018); *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009).

The trial court ordered service on respondent in person, but because of difficulties with service it also authorized service by certified mail and publication. Respondent's counsel and petitioner's witnesses agreed that respondent had no known consistent residence or phone number. She used other person's phones and participated in one hearing with her attorney's phone. A court officer made three attempts to serve respondent in person. Petitioner tried to contact respondent at her previous addresses and at her mother's home. Under the circumstances, the trial court's decision to authorize substitute service, including by certified mail under MCR 3.920(B)(4)(b), was justified.

The trial court ultimately found that service was effective by certified mail, although the receipt had been signed in the name of "Covid 19." Although respondent's counsel questioned whether "it was the mother signing," the court noted that the certified mail was addressed to respondent at an address she provided. Moreover, the return receipt was dated June 24, 2020, and respondent acknowledged her presence on the record on the first trial date, September 22, 2020, which indicates that she had actual notice of the proceeding. Given this record, the trial court did not err by finding that there was adequate service, and the record does not support respondent's claim that she did not have notice of the proceeding.

### III. ATTENDANCE AT ZOOM HEARINGS

Respondent also argues that the trial court violated her right to due process by failing to ensure that she had the ability to attend and participate in hearings by Zoom.[3]

Respondent argues that the trial court failed to ensure that she had adequate access to Zoom technology and failed to advise her of the right to an in-person hearing. Since March 2020, our Supreme Court has issued a series of administrative rules authorizing use of videoconferencing technology in lieu of normal in-person proceedings. See e.g., Administrative Order 2020-9, Administrative Order 2020-14. In *In re Smith-Taylor*, ___ Mich App ___; ___ NW2d ___ (2021) (Docket No. 356585), rev'd in part on other grounds ___ Mich ___ (2022) (Docket No. 163725), the respondent consented to conducting the first day of a termination hearing by Zoom. Her counsel consented to Zoom proceedings on the remaining hearing dates. The respondent argued on appeal that the trial court erred by failing to inform her of the right to be present in person. *Id.* at ___; slip op at 10. This Court held that the trial court was not required to "specifically articulate respondent's right to an in-person hearing separate from asking her whether she consented to a hearing over videoconference." This Court further stated that the respondent "failed to set forth any argument as to how the outcome of the proceedings would have been different had they taken place in-person." *Id.* at ___; slip op at 11. The Court therefore concluded that the respondent failed to establish any violation of her due-process rights. *Id.*

Respondent fails to cite authority requiring the trial court to advise her of a right to an in-person hearing or requiring the court to inquire on the record that she had access to a phone or

---

[3] Because respondent never objected to having hearings conducted by Zoom, or otherwise raised this issue in the trial court, this issue is unpreserved. Accordingly, review of this issue is limited to plain error affecting respondent's substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008).

computer. On the one occasion where respondent did appear by Zoom, she consented on the record to the trial being conducted by Zoom, but because of difficulty maintaining a connection, the trial court adjourned the trial because "this doesn't sound like an intelligent way to run a trial[,] [s]o we're not going to." Thus, the court protected respondent's right to due process by refusing to proceed with the trial when, despite respondent's consent to participating by Zoom, technical difficulties impeded her participation. Nothing in the record suggests that respondent's lack of participation at other Zoom hearings was due to an inability to use Zoom technology as opposed to a general unwillingness to participate. If respondent did not have access to Zoom technology she could have participated from her counsel's office where Zoom was available to her, as she had on the one occasion on which she did participate. Thus, it appears that respondent's lack of participation at other hearings was consistent with her pattern of disinterest throughout the case, including her sporadic contact with petitioner and her ongoing failure to provide stable contact information. Respondent's counsel never indicated that respondent wanted to participate but lacked access to a computer or phone, and respondent never contacted anyone to ask for help with Zoom technology or to advise that she was unable to participate in that manner. Moreover, because there is no indication in the record that respondent wanted to attend hearings in person and would have done so if she had that option, she has not demonstrated any likelihood of a different outcome if she had been given the option to attend in person. On this record, respondent has not demonstrated a plain error affecting her substantial rights.

## IV. STATUTORY GROUNDS

Respondent next argues that the trial court erred by finding that the evidence supported a statutory ground for termination. We disagree.[4]

In an action to terminate parental rights, the petitioner must prove by clear and convincing evidence that at least one statutory ground for termination in MCL 712A.19b(3) exists. MCR 3.977(A)(3) and (H)(3); *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000). The trial court terminated respondent's parental rights under MCL 712A.19b(3)(a)(*ii*), (g), (i), and (j), which permit termination under the following circumstances:

>  (a) The child has been deserted under either of the following circumstances:
>
> \* \* \*
>
>  (*ii*) The child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period.

---

[4] The trial court's decision that statutory grounds for termination exist is reviewed for clear error. MCR 3.977(K); *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000). A finding is clearly erroneous when the reviewing court is left with the firm and definite conviction that a mistake was made. *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2013). "[T]his Court accords deference to the special opportunity of the trial court to judge the credibility of the witnesses." *In re Fried*, 266 Mich App 535, 541; 707 NW2d 192 (2005) MCR 2.613(C).

\* \* \*

   (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

   (i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

   (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

  With respect to § 19b(3)(a)(*ii*), a parent's failure to make any substantial effort to visit or communicate with a child for the statutory 91-day period constitutes abandonment. *In re Webster*, 170 Mich App 100, 109; 427 NW2d 596 (1988). We conclude that the trial court erred in finding clear and convincing evidence based on a lack of visitation given that the trial court had denied even supervised visitation early in the case and required respondent to move out of the home she had shared with the child and its father. We also conclude that the trial court erred in finding statutory grounds under § 19b(3)(g). That subsection requires that the respondent be financially able to provide proper care and custody. The trial court stated that respondent "does have the ability, I think, to contribute something financially. It may not be much but it'll be something financially." There was no evidence, however, regarding respondent's ability to contribute financially to the child's support.

  However, we find no error in the trial court's conclusion that termination was warranted under § 19b(3)(i). As noted, respondent previously had her rights to seven other children one of whom nearly died. Six of the terminations occurred because respondent failed to protect her children from Jones's severe physical and sexual abuse, denied his responsibility for the abuse, and stayed in a relationship with him. *In re Jackson/Jenkins/Jones*, unpub op at 4. That relationship ended because of Jones's incarceration. This was not merely a failure on her part to recognize that Jones was assaulting or abusing the children. To the contrary, respondent was aware of the abuse but insisted that the children were not telling the truth and remained in a relationship with Jones. And in 2018, respondent pleaded guilty of fourth-degree child abuse. In addition, CPS determined in 2015 that respondent beat one of her children with an extension cord "leaving bruising all over his body . . . ." And in 2016, another of her children nearly drowned at a beach due to respondent's failure to supervise him. Further, as noted, respondent provided no contact information and made no apparent effort to maintain contact with the caseworkers, showed little to no interest in participating in the proceedings, and offered no explanation of how she had reformed herself to make better judgments that prioritized her child's safety and welfare. The trial court did not clearly err by finding that the evidence supported termination under § 19b(3)(i).

Further, considering respondent's prior history of failing to protect her children from unreasonable risks of harm, her own conviction of child abuse, and her continued lack of cooperation and nonparticipation in this case, the trial court did not clearly err by finding that the evidence supported termination under § 19b(3)(j). Although respondent's counsel suggested that the child's safety could be protected if the child remained in Scott's care under a custody order that restricted respondent's involvement, in the absence of any evidence demonstrating respondent's willingness to cooperate with a custody arrangement, the trial court did not clearly err by rejecting this option.

Because only one statutory ground for termination is necessary, and the trial court did not clearly err by finding that grounds for termination were established under §§ 19b(3), (i), and (j), any error in relying on §§ 19b(3)(a)(*ii*) and 19b(3)(g) as additional grounds for termination was harmless.

Contrary to what respondent argues, the trial court was not precluded from terminating her parental rights because petitioner failed to offer reunification services. Generally, reunification services are required in all cases, absent certain exceptions. MCL 712A.19a(2). One exception is where a parent "has had rights to the child's siblings involuntary terminated and the parent has failed to rectify the conditions that led to that termination of parental rights." MCL 712A.19a(2)(c). The trial court found that respondent's parental rights to seven other children were previously terminated and that respondent "has not rectified the conditions that led to the prior terminations." This finding is not clearly erroneous. Indeed, as already explained, the trial court did not clearly err by finding that the evidence supported termination under § 19b(3)(i). Therefore, reunification services were not required.[5]

## V.  BEST INTERESTS

Respondent also argues that the trial court erred by finding that termination of her parental rights was in the child's best interests. We again disagree.[6]

Once a statutory ground for termination is established, the trial court shall order termination of parental rights if it finds that termination is in the child's best interests. MCL 712A.19b(5). Whether termination is in the child's best interests must be established by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). "[T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home," are all factors for the court to consider

---

[5] The record indicates that prior to the previous child protection cases, respondent did receive services, including Families First services, family counseling and maternal infant health services. She was also referred for parenting classes and individual counseling.

[6] The trial court's best-interest decision is also reviewed for clear error. *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 637; 853 NW2d 459 (2014). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

when deciding whether termination is in the best interests of the child. *In re White*, 303 Mich App 701, 713; 8463 NW2d 61 (2014). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714.

The child was removed from respondent's care shortly after birth and, thereafter, respondent essentially disappeared. Despite this, respondent argues that the trial court erred by assigning undue weight to the number of past terminations and failure to benefit from past services. She further contends that the court should have given greater weight to testimony at a pretrial hearing that she had expressed remorse for her past conduct. However, by failing to maintain contact and communicate with the caseworkers, respondent forewent any opportunity to demonstrate a genuine commitment to reformation or any interest in being reunited with her child. The trial court did not clearly err by finding that termination of respondent's parental rights was in the child's best interests.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, respondent argues that she was denied the effective assistance of counsel.[7]

The principles applicable to claims of ineffective assistance of counsel in the arena of criminal law also apply by analogy to child protective proceedings. *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). To establish ineffective assistance of counsel, "it must be shown that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent." *Id*. To establish prejudice, respondent must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *People v Trakhtenberg*, 493 Mich 38, 56; 826 NW2d 136 (2012) (citations omitted).

Respondent argues that trial counsel was ineffective for failing to object to the lack of proper service and notice, and for not objecting to her exclusion from the proceedings because of an inability to participate by Zoom. The record does not support these claims.

With respect to service, the trial court found that a certified mail receipt, signed "Covid 19" and dated June 24, 2020, was signed by respondent and demonstrated that she had been served by certified mail. Respondent's counsel did question whether it was respondent who signed the receipt, but the trial court found that respondent had signed it, given that it was addressed to her at an address she provided and that she was attempting to be humorous by signing it "Covid 19." Moreover, respondent acknowledged her presence on the record on the first trial date, September 22, 2020, which indicates that she had notice of the proceeding. With respect to hearings being conducted by Zoom, the record indicates that respondent expressly consented to the Zoom hearing on September 22, 2020, but the trial court subsequently adjourned that proceeding because of technical problems. Respondent did not participate in subsequent hearings, and she has not

---

[7] Because respondent did not raise this issue in the trial court and this Court denied her motion to remand, our review of this claim "is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

identified any evidence or submitted any offer of proof showing that she lacked the ability to participate by Zoom, informed counsel that she was unable to participate by Zoom, or informed counsel that she wanted to appear in person. Accordingly, the record does not support these ineffective-assistance claims.

Respondent also argues that trial counsel was ineffective for failing to object to hearsay testimony, but she does not identify the testimony that she believes was inadmissible hearsay. Instead, she generally asserts that "everything was hearsay" because three different workers were assigned to the case. Because respondent has not identified the factual basis for her claim that counsel failed to object to inadmissible hearsay, this claim cannot succeed. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Respondent also argues that trial counsel should have presented evidence that her circumstances had changed since the prior terminations. However, respondent fails to explain what specific evidence counsel should have presented. The trial court was aware that Jones was incarcerated and that Scott was a suitable parent, but these circumstances do not establish that respondent herself had changed. Respondent's complaint that counsel failed to portray her favorably is disingenuous in view of the evidence of her lack of cooperation with caseworkers, her failure to maintain contact with the caseworkers, and her decision to essentially absent herself from the proceedings. Moreover, given these circumstances, respondent has not established that she was prejudiced by counsel's alleged errors.

Affirmed.

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Noah P. Hood