*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ANTOON/STILTNER, Minors.

UNPUBLISHED
December 19, 2024
9:02 AM

Nos. 368705; 368706
Wayne Circuit Court
Family Division
LC No. 2015-520744-NA

Before: N. P. HOOD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-mother appeals as of right the trial court's order terminating her parental right to the minor children, MS, LS, and BA, under MCL 712A.19b(3)(g) and (j). Respondent-father appeals as of right the trial court's order terminating his parental rights to BA under MCL 712A.19b(3)(a)(*ii*) and (k)(*i*). We affirm as to respondent-father, but reverse and remand for further proceedings as to respondent-mother.

## I. FACTUAL BACKGROUND

Respondents have one child together, BA. Respondent-mother has two daughters, LS and MS, from her prior relationship with R. Stiltner, who died in 2021. In September 2021, respondent-mother experienced a psychotic episode while the children were in her care. Respondent-mother was hospitalized for several weeks to receive psychiatric treatment. Children's Protective Services (CPS) and respondent-mother agreed to a safety plan that included placing BA, LS, and MS in the care of LS's and MS's paternal aunt. In addition, CPS referred respondent-mother for voluntary services through Families First and First Family Counseling.

---

[1] This Court consolidated the appeals to advance the efficient administration of the appellate process. *In re Antoon/Stiltner*, unpublished order of the Court of Appeals, entered November 29, 2023 (Docket Nos. 368705; 368706).

Respondent-mother was hospitalized for psychiatric treatment on three separate occasions between September 2021 and February 7, 2022. In May 2022, the Department of Health and Human Services (DHHS) petitioned the court to terminate respondents' parental rights. In November 2022, the trial court took jurisdiction over the children and in September 2023, after several days of hearings, the court found statutory grounds to terminate respondents' parental rights. The court further found that termination of respondents' parental rights was in the children's best interests. Respondents now appeal.

## II. ANALYSIS

## A. REASONABLE EFFORTS

At the conclusion of the June 2022 preliminary hearing, the court found that because aggravated circumstances were present, DHHS was not required to make reasonable efforts to reunify respondents with their respective children. In its written order, the court referenced MCL 722.638(1) and (2), and noted respondents' "untreated mental illness, hospitalizations, improper supervision, lack of housing, failure to protect," as the aggravated circumstances that relieved DHHS of the obligation to make reasonable efforts toward reunification. On appeal, both respondents argue that the trial court erred when it found that reasonable efforts were not required. This Court reviews for clear error a trial court's decision regarding reasonable efforts. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). A finding is clearly erroneous when, after reviewing the entire record, this Court is left with the definite and firm conviction that a mistake has been made. *In re Dearmon*, 303 Mich App 684, 700; 847 NW2d 514 (2014).

Because respondents are not similarly situated, the examination of their claims of error will necessarily differ. But the starting point is the same: a review of the statutory provisions governing DHHS's obligations to make reasonable efforts toward reunification in child protective proceedings. It has become nearly axiomatic that "[r]easonable efforts to reunify the child and family must be made in *all* cases except those involving aggravated circumstances[.]" *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) (quotation marks and citation omitted). Absent aggravated circumstances, DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017).

MCL 712A.19a and MCL 722.638 govern whether special circumstances justify seeking termination of parental rights at the initial disposition and excuse DHHS from making reasonable efforts toward reunification. Under MCL 712A.19a(2), reasonable efforts to reunite the child and family must be made in all cases unless any of the following apply:

> (a) *There is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638.*

> (b) The parent has been convicted of 1 or more of the following:

> (*i*) Murder of another child of the parent.

-2-

(*ii*) Voluntary manslaughter of another child of the parent.

(*iii*) Aiding or abetting in the murder of another child of the parent or voluntary manslaughter of another child of the parent, the attempted murder of the child or another child of the parent, or the conspiracy or solicitation to commit the murder of the child or another child of the parent.

(*iv*) A felony assault that results in serious bodily injury to the child or another child of the parent.

(c) The parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights.

(d) The parent is required by court order to register under the sex offenders registration act.  [Emphasis added.]

Embedded in MCL 712A.19a(2)(a) are the requirements of MCL 722.638(1) and (2). MCL 722.683(1) requires DHHS to file a petition for authorization by the court under MCL 712A.2(b) if one or more of the following apply:

(a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

(*i*) Abandonment of a young child.

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

(*iii*) Battering, torture, or other severe physical abuse.

(*iv*) Loss or serious impairment of an organ or limb.

(*v*) Life threatening injury.

(*vi*) Murder or attempted murder.

(b) The department determines that there is risk of harm, child abuse, or child neglect to the child and either of the following is true:

(*i*) The parent's rights to another child were terminated as a result of proceedings under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, or a similar law of another state and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

(*ii*) The parent's rights to another child were voluntarily terminated following the initiation of proceedings under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, or a similar law of another state, the parent has failed to rectify the conditions that led to the prior termination of parental rights, and the proceeding involved abuse that included 1 or more of the following:

(A) Abandonment of a young child.

(B) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

(C) Battering, torture, or other severe physical abuse.

(D) Loss or serious impairment of an organ or limb.

(E) Life-threatening injury.

(F) Murder or attempted murder.

(G) Voluntary manslaughter.

(H) Aiding and abetting, attempting to commit, conspiring to commit, or soliciting murder or voluntary manslaughter.

Under MCL 712A.19a(2)(a), there must be a "judicial determination that the parent has subjected the child to aggravated circumstances" before DHHS is excused from making reasonable efforts. *In re Smith-Taylor*, 509 Mich 935, 935; 971 NW2d 657 (2022) (quotation marks omitted). However, there are other aggravated circumstances that do not specifically require a judicial determination. See, e.g., MCL 712A.19a(2)(c), which simply provides that reasonable efforts are not required if a parent has had rights to another child involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights.

Lastly, to fulfill the duty to make reasonable efforts, DHHS must create a service plan outlining the steps that it and the parent will take to rectify the issues that led to court involvement and to achieve reunification. *In re Smith-Taylor*, 509 Mich at 935. "The adequacy of the [DHHS's] efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009).

## 1. RESPONDENT-MOTHER

Applying these principles, we conclude that the trial court erred when it held that DHHS was not required to make reasonable efforts to reunify respondent-mother with her three children. The "aggravated circumstances" identified by the trial court in its June 29, 2022 order, included untreated mental illness, hospitalizations, and improper supervision. These circumstances are not contemplated by MCL 712A.19a(2) or MCL 722.638. Accordingly, the trial court erred when it found that DHHS was relieved of its obligations to provide reasonable efforts to respondent-mother. Moreover, this Court recently held that such an error prejudices a respondent "because (1) it is unclear how an aggrieved respondent could establish outcome-determinative error

concerning the denial of reunification services altogether and (2) the error improperly dispensed with a critical aspect of a child protective proceeding—the requirement to offer reunification services before terminating parental rights—affected the very framework within which this case progressed, undermined the foundation of the rest of the proceedings, and impaired respondent's fundamental right to direct the care, custody, and control over her children." *In re Barber/Espinoza*, ___ Mich App ___, ___; ___ NW2d ___ (2024) (Docket No. 369359); slip op at 9, lv pending. Thus, we reverse the trial court's order terminating respondent-mother's parental rights and remand for further proceedings.

## 2. RESPONDENT-FATHER

Respondent-father argues that the trial court erred when it terminated his parental rights because it excused DHHS from making reasonable efforts to reunite him with BA when no aggravating circumstances existed. We disagree.

Under MCL 712A.19a(2)(a) and MCL 722.638(1)(a)(*i*), DHHS is not required to make reasonable efforts when a parent abuses a child and that abuse includes abandonment of a young child. MCL 722.622(g) defines "child abuse" to include harm or threatened harm to a child's health or welfare that occurs through the nonaccidental physical or mental maltreatment by a parent. In *In re Webster*, 170 Mich App 100, 109; 427 NW2d 596 (1988), this Court held that the respondent's failure "to make any substantial effort to visit or communicate with their child for over one year" established abandonment.

By the May 2022 petition, DHHS sought termination of respondent-father's parental rights under MCL 712A.19b(3)(a)(*ii*) (desertion of a child for 91 or more days) and (k)(*i*) (abandonment of a young child). At the time DHHS filed its petition, respondent-father's whereabouts were unknown. Eventually, DHHS located him at the residential facilities operated by Team Wellness. At the June 29, 2022 preliminary hearing, the CPS worker testified that respondent-father had not contacted or visited his son since 2016. At the conclusion of the preliminary hearing, the court authorized the petition based, in part, on a finding that respondent-father abandoned his son. Relying on MCL 722.638, the court further found that DHHS need not make any efforts toward reunification as to either respondent.[2] Then, at the October 26, 2022 trial, respondent-father testified that he had only seen BA on one occasion, and that had been about four years earlier. BA was five years old at the time of adjudication, thus, he must have been a very young child, indeed an infant, when respondent-father last saw him. At the conclusion of the adjudication, the court took jurisdiction over BA on account of respondent-father's conduct and found, again, that reasonable efforts toward reunification were not required.

---

[2] We recognize that this ground was not reflected in the trial court's order after the hearing; however, we do not reverse a trial court's decision when it reaches the right result albeit for the wrong reason. *People v Powers*, 208 Mich App 582, 591; 528 NW2d 799 (1995).

On this record, there was clear and convincing evidence[3] that respondent-father abandoned BA several years earlier. Because the trial court appropriately found that reasonable efforts were not required under MCL 712A.19a(2)(a), respondent-father's argument that DHHS did not make reasonable efforts fails. See *In re Rippy*, 330 Mich App 350, 358-359; 948 NW2d 131 (2019).

## B. BEST INTERESTS

Respondent-father challenges the trial court's finding that termination of his parental rights was in his child's best interest. After reviewing the record, we find that the trial court did not err in this regard.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). When considering whether termination of parental rights is in a child's best interests, a court may consider a variety of factors. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2001). These factors include the bond between the child and the parent, the parent's ability to parent the child, the child's need for permanency and stability, the advantages of a foster home over the parent's home, the parent's compliance with the case service plan, the parent's visitation history with the child, and the possibility of adoption. *Id.* at 713-714. In addition, the trial court should consider the child's safety and well-being, including the risk of harm a child might face if returned to the parent's care. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011). The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. The court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *Id.* at 90. This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones*, 286 Mich App at 129.

At the time of termination, BA was seven years old. The paternal aunt of MS and LS had known BA for all of his life and considered him family. BA was doing well in the paternal aunt's care, all of his needs were being met, and the paternal aunt wished to adopt him.

Respondent-father argues that he was trying to prepare a home for BA. The child's GAL argues on appeal that respondent-father had been "incarcerated for some time," that he was released shortly before the court's involvement, that he was trying to prepare a home for his son, and that he offered family members for temporary placement. These assertions are unsupported by the record. There was no testimony that respondent-father was incarcerated "for some time." Respondent-father testified that he was arrested for retail fraud and then allowed to participate in

---

[3] A trial court's finding that aggravated circumstances exist such that services are not required must be based on clear and convincing evidence. *In re Simonetta*, 507 Mich 943; 959 NW2d 170 (2021).

a residential jail diversion program. He further testified that after completing the program, he was allowed to stay on as a renter while he looked for an apartment. The record is devoid of any specific time frames, so it is difficult to accept the GAL's suggestion that respondent-father was somehow excused from planning for his child. Further, there was no evidence that respondent-father offered family members to care for BA. Indeed, the evidence supports a finding that respondent-father approved of BA's placement with a fictive aunt, a decision he had no part in, because it allowed BA to remain with his siblings. More significant, there was no evidence to support the suggestion that after BA came into care, respondent-father was working to find a home for the two of them. When this matter was initiated in May 2022, respondent-father explained that he was renting temporary housing through Team Wellness. He testified at the time that his "team" was in the process of securing suitable housing and he hoped to transition soon. Sixteen months later, respondent-father testified at the best-interest hearing that he was still renting lodging from Team Wellness but that he hoped to have his own apartment in the next two weeks. Respondent-father was in a position to provide for BA's basic needs.

When considering a child's best interests, the court may consider the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). Further, the trial court may consider the possibility of adoption. *In re White*, 303 Mich App at 713. In this case, a preponderance of the evidence supports a finding that the paternal aunt's home was preferable to respondent-father's nonexistent housing, because it would provide BA with the care and support he required to facilitate his continued growth and development.

The court also considered BA's need for permanency and finality. BA had been placed out of respondent-mother's home for three years. Termination of respondent-father's parental rights would give BA the opportunity to benefit from the stability and permanence the paternal aunt was willing and able to provide while maintaining a relationship with his older half-siblings. *Id.* (As part of its best-interest determination, it is permissible for the court to consider the sibling relationships).

Further, respondent-father had virtually no bond with BA. He had never made any effort to establish a relationship with his son. Respondent-father testified that he had seen BA on one occasion when the child was approximately a year old. There was testimony that respondent-father had not expressed an interest in participating in services or parenting time. BA referred to MS's and LS's father as "dad." Considering this, any bond that might have existed between respondent-father and his son was insignificant.

The court also considered the fact BA was, technically, with fictive kin. In general, placement with a relative is a factor that favors reunification. Even though placement with a relative weighs against termination, and such a placement must be considered, a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the children's best interests. *In re Olive/Metts*, 297 Mich App at 43. In this case, the trial court properly balanced relevant factors and it did not clearly err by finding that termination of respondent-father's parental rights was in the child's best interests despite that he was placed with a relative.

On this record, the trial court did not clearly err when it found that termination of respondent-father's parental rights was in BA's best interests. The court properly weighed the appropriate factors when considering BA's best interests, and on balance, a preponderance of the evidence weighed in favor of terminating respondent-father's parental rights.

Affirmed as to respondent-father, but reversed and remanded for further proceedings as to respondent-mother. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Anica Letica